(No. 25732.—
JOHN A. KESHNER, Exr., Appellee, *vs.* FANNIE KESHNER
*et al.* Appellants.

*Opinion filed April 15, 1941.*

Murphy, J., took no part.

Joseph B. McGlynn, and John T. Thomas, for appellants.

Wilbur A. Trares, and McHale & McHale, for appellee.

Mr. Justice Shaw delivered the opinion of the court:

This is an appeal, on leave granted by this court, from the judgment of the Appellate Court for the Fourth District where the cause was heard on appeal from the circuit court of St. Clair county. We restate the facts substantially as stated in the opinion of the Appellate Court, omitting a portion of that opinion which referred to a matter of practice not here in issue.

Edward P. Keshner died testate December 23, 1933, leaving Fannie H. Keshner, his widow, Julia Keshner, a daughter, and Joseph Keshner, a son, his only heirs. John A. Keshner, a brother of deceased, qualified as executor and is referred to as petitioner. He filed a petition under sections 82 and 83 of the Administration act (Ill. Rev. Stat. 1939, chap. 3, pars. 83, 84; Jones Ill. Stat. Ann. 110.083, 110.084;) in the probate court of St. Clair county, citing Fannie H. Keshner, Julia Keshner, and Joseph Keshner to appear and show cause why they should not deliver to the petitioner stocks, bonds, notes and cash withheld by them from petitioner and particularly $7000 Liberty Loan

bonds. After a hearing in the probate court the cause was appealed to the circuit court where it was tried *de novo* and resulted in an order granting the prayer of the petition and directing Fannie H. Keshner and Julia Keshner to pay and deliver to petitioner within thirty days $10,119.61, and jurisdiction was retained to compel performance of the order. No order was entered against Joseph Keshner.

The evidence shows that Edward P. Keshner was for many years a stockholder and officer in the Union Trust Company of East St. Louis. He became ill in 1928 or 1929 and was in the hospital practically all the time from October, 1930, to the date of his death. In April, 1929, Fannie H. Keshner sold some bank stock which Edward P. Keshner had given her and received therefor $27,000. October 8, 1929, he sold 200 shares of the Union Trust Company stock for $30,450 and received a cashier's check payable to his order for that amount. He presented the check bearing his blank indorsement to the Belleville Bank and Trust Company and, after paying some indebtedness he owed the bank, he received five drafts aggregating $11,428.89, all payable to his order, dated October 8, 1929. Only three of the drafts need be further considered, those being in amount of $1350, $1401.14, and $5000, respectively. On October 14, 1929, the three drafts were presented to the Lafayette South Side Bank and Trust Company, bearing the blank indorsement of Edward P. Keshner, and the proceeds of said drafts are traceable as follows: $6913.86 for the purchase of $7000 United States Fourth Liberty Loan bonds, the balance of $792.28 being evidenced by a treasurer's check issued by the said Lafayette South Side Bank and Trust Company payable to Mrs. E. P. Keshner. The bonds were not registered. The controversy is in reference to these bonds and the treasurer's check, or the money which they evidence.

Respondents contend that Edward P. Keshner delivered the bonds to Fannie H. Keshner under circumstances

amounting to a gift *inter vivos.* It is claimed that the treasurer's check was made payable to Fannie H. Keshner at the direction of Edward P. Keshner. Petitioner denies there was a gift and claims that Fannie H. Keshner and Julia Keshner acquired possession of the bonds without the knowledge or consent of Edward P. Keshner.

From the testimony of respondents it appears that prior to October 14, 1929, Julia Keshner attended to some business matters for her father but the extent or nature of such transactions are not known. It is clearly established that Julia Keshner acted for her mother in all the transactions concerning the matter under inquiry.

From the testimony of Julia Keshner, it appears that Edward P. Keshner delivered the three drafts to her to purchase Liberty bonds. After her father indorsed the drafts in blank, she took them to the Lafayette South Side Bank and Trust Company and purchased the bonds. The bonding department of said bank issued a statement of the sales account, showing the transaction to have been made with E. P. Keshner, but Mr. Peterson, the bank representative who had charge of the sale for the bank, testified that Keshner was not present, that there was no telephone conversation, and the dealings were all with Julia Keshner. She testified on direct examination that she delivered the treasurer's check for $792.28 to her father and that he indorsed it and delivered it to Fannie Keshner. However, on cross-examination, she stated that she had the treasurer's check made payable to Fannie Keshner at the direction of her father. Her testimony is that immediately after receiving the bonds and treasurer's check at the bank she took them home and handed them to her father; that, in the presence of her brother Joseph and herself, he delivered the check and the bonds to respondent Fannie Keshner and said: "I give you these bonds for you to do the best you can with them. I do not owe a cent in the world"; that Fannie Keshner accepted the bonds and the check;

that after Fannie Keshner indorsed the check she delivered it and the bonds to Julia and she deposited the check in the bank for respondent Fannie Keshner and placed the bonds in her safety deposit box in the National Stock Yards National Bank to be held for her mother. The evidence of Fannie Keshner and Joseph Keshner corroborates the testimony of Julia as to the delivery of the bonds and the statements made by Edward P. Keshner at time of delivery. Many impeaching questions were asked respondents for the purpose of showing their evidence in the circuit court varied from their testimony in the probate court. Some discrepancies are shown, but upon the question of delivery of the bonds and what Edward P. Keshner said, there is no substantial impeachment.

In 1931, Julia Keshner converted the Liberty bonds into cash and reinvested the proceeds, less $219.94, in Bishop of Chicago bonds. The difference was given to Fannie Keshner. In November 1932, the Bishop of Chicago bonds were converted and the money used by respondents.

Petitioner did not file an inventory but testified the only assets he had been able to discover were $150. Leo A. Keshner, a brother of deceased, held two promissory notes, one for $1000 dated April 15, 1928, and one for $200 dated May 10 the same year. These notes were filed as claims against the estate and were allowed. Fannie Keshner filed a claim against the estate for $8500 and alleged it was for money advanced and expended for Edward P. Keshner for hospital bills, doctor's bills, insurance premiums, medicine, funeral bills, attorneys' fees, etc. This claim had not been acted upon by the probate court at the time of the hearing.

Keshner's will was dated April 5, 1933, and directed the payment of debts and funeral expenses. He gave $100 for masses for his soul and $3000 to Leo A. Keshner, his brother, and the remainder of real and personal property to Fannie H. Keshner.

On the trial of the case in the circuit court certain documents were received in evidence which were in the form of letters, but actually they had been delivered without passing through the mail. They were all signed by the deceased E. P. Keshner and each of them purports to recount some phase of the deceased's dealings with his brother, his wife and his daughter. The receipt of these documents was held by the Appellate Court to be erroneous and constitutes one of the grounds for the reversal of the judgment of the circuit court. It will not be necessary to consider more than one of these in detail and that one is petitioner's exhibit "26a" which is as follows:

> "Red Bud, Ill.
> September 23, 1930.
>
> "Dear Bro:—
> Fannie has $7000.00 of U. S. 4½% bonds in her safe deposit box which belong to me. She says they were put in a large envelope marked E. P. Keshner. All I owe is $600.00 balance on note to St. Mary's Hospital, and the two notes which you hold 1 for $1200.00 and 1 for $1500.00.
>
> Your Bro.
> E. P. KESHNER."

Those sections of the Administration act which are referred to above are intended to provide a comprehensive and summary means for the discovery and recovery of assets, or of their value if they have been converted. The proceeding is purely statutory and is neither at law nor in equity. It bears the equitable aspects of a bill of discovery, while at the same time providing for an optional jury as at law on demand of the parties, where questions arise concerning claims of adverse title or interest, and this provision is valid. (*Hansen* v. *Swartz,* 345 Ill. 609.) The court is given power to determine all questions of adverse title or of right of property, and it may enforce its judgments by execution or by proceedings in contempt. The proceeding may be merely for the purpose of obtaining

information with no adversary aspects, or it may develop into an out and out suit for the recovery of money. We have thus an anomalous proceeding and the peculiar nature of this kind of a suit has a distinct bearing on the decision of this case.

The appellees urge that because Edward P. Keshner, deceased, could not, in his lifetime, have used the letter above quoted in seeking to recover the bonds from his wife and daughter it must necessarily follow that his executor cannot do so. We do not think this result follows from this argument in this case. We must look behind the form of this action to its substance. On its face it appears to be a contest between the executor, on the one hand, and the widow and daughter of the deceased, on the other, but this is not what it actually is. The executor was not even a necessary party complainant because the proceeding could have been started by the creditor himself. (*Day* v. *Bullen,* 226 Ill. 72.) Neither the executor nor the creditor would necessarily have been proceeding for the recovery of a money judgment or even of specific property, although either of these results might have occurred. It might have been merely a fishing expedition for the discovery of evidence, or evidence of title, or for the names of witnesses, or for any proper information necessary to the creditor or the executor for the use of the creditor in the recovery of assets of the estate, and for its proper administration.

The letter above quoted was a distinct admission against interest by Edward P. Keshner in favor of his creditor. It was an admission of liability on the notes in question and a property statement, such as any debtor might be required to give for the extension or continuance of credit and such a statement as a creditor might properly rely on. He told his brother exactly what property he owned, where it was and how and in whose custody it was deposited, and gave him what purported to be an exact statement of

his liabilities, including the notes he owed his brother. Had this suit been in the form of a bill in equity against the executor, the widow and the daughter to subject these bonds to the lien of a judgment held by the creditor, there could be no doubt about the admissibility of this evidence. Inasmuch as the result sought to be obtained by this proceeding is, in substance, the same, regardless of the form of the action and its anomalous nature, we think the same rule should be applied. What was stated in the letter was either the truth, or what Edward P. Keshner thought was the truth, or else was intended to mislead the creditor, and on either of these theories it would be relevant and competent. Besides this, it is generally competent for a party to prove that he has always claimed ownership of property which is in litigation. (*Whitaker* v. *Wheeler,* 44 Ill. 440; *Martin* v. *Martin,* 174 id. 371.) The circuit court did not err in admitting this letter in evidence. We think it unnecessary to discuss the competency of the other documents because we will presume that the court considered only the competent evidence.

We are not unaware of the holdings of this court in cases such as *Sifford* v. *Cutler,* 244 Ill. 234, that an administrator, on a proceeding to sell real estate to pay debts, stands in the position of his decedent and cannot have a fraudulent conveyance set aside in that proceeding. That decision was based on the narrow construction of that particular statute concerning the sale of real estate to pay debts, as a reference to page 238 of the opinion will show. In such a case, the general equitable rule is applied, and the parties are left where they placed themselves. The distinction between the powers of an administrator and a creditor in this respect is apparent on comparison of that case with the case of *White* v. *Russell,* 79 Ill. 155, where it was held that the proper means of reaching property which had been conveyed in fraud of creditors was by bill

in equity filed by one or more creditors. In our discussion above we have pointed out that the case at bar is for the benefit of the creditor and could have been started by him.

It cannot be said in this case that the testimony of the widow and daughter must be evaluated by the ordinary rules applying to adverse witnesses. They were not the witnesses of the creditor or executor but of the court, and no matter by whom they were examined the creditor could not be bound by their testimony nor be held to have vouched for its truthfulness. To apply such a rule to this proceeding would be to destroy its usefulness in the administration of estates and completely thwart the very purpose for which the statute was enacted. (*Wade* v. *Pritchard,* 69 Ill. 279.) It frequently happens that the only persons who know the facts of a transaction with a deceased person are the very persons whose object and interest is to conceal those facts. Under such circumstances, so far as the other persons interested are concerned, they are actually adverse and reluctant witnesses and their examination and testimony, for all practical purposes, must be so considered and weighed.

In this case Fanny Keshner and Julia Keshner, giving their testimony its utmost possible value, and using their own words, which are identical in the testimony of each of them, said that the husband and father had said: "Take these bonds and do the best you can with them." Julia testified that he added the words "I don't owe a cent in the world," but they were immaterial and obviously untrue if said by him. Considering this testimony standing alone, without any other evidence, it would not be sufficient to prove a gift. In *Rothwell* v. *Taylor,* 303 Ill. 226, this court held that the burden of proof of a gift is on the donee and that such proof must be by clear and convincing evidence. The words which these interested witnesses attributed to their deceased husband and father fall far short of this requirement. Considered in connection with

the father's helpless condition, with the fact that such a gift would strip him of his only means of support, his only means of paying his brother to whom he was indebted and the further fact that his daughter Julia was admittedly transacting business for him, these words must be otherwise construed. Even if he did say what they say he said, such a statement could be intended to mean that the mother and Julia were to go ahead and manage the fund for his interest or in the interest of the family. Clearly, if Julia were to continue as his agent she would require possession of the bonds, and that was given to her. To "do the best she could with them," would by no means indicate or require that either she or her mother should have the unqualified title to the bonds or their proceeds to the exclusion of her father's means of livelihood and the detriment of his creditors.

It is well known that courts lend a very unwilling ear to statements by interested persons about what dead men have said; that such evidence is subject to great abuse and that it will be carefully scrutinized as well as considered with all the other evidence in the case. (*Megginson* v. *Megginson,* 367 Ill. 168, 180; *Fierke* v. *Elgin City Banking Co.* 366 id. 66.) The evidence in this case which was intended to prove a gift falls far short of that clear and convincing proof which the law requires, and we hold, as a matter of law, that it was insufficient for that purpose. It follows that the judgment of the Appellate Court must be reversed, and the judgment of the circuit court affirmed.

*Appellate Court reversed.*
*Circuit court affirmed.*

Mr. JUSTICE MURPHY took no part in this decision.