In re Estate of Mary Louise Collins, Deceased. First National Bank of Belleville, Administrator with Will Annexed of Estate of Mary Louise Collins, Deceased, Appellant, v. Annie Dekum, Appellee.

Heard in this court at the February term, 1944. Opinion filed February 28, 1944. Rehearing denied May 23, 1944.

FARTHING, FARTHING, & FEICKERT, of Belleville, for appellant.

OEHMKE & DUNHAM, MORRIS B. CHAPMAN and EUGENE H. WIDMAN, all of East St. Louis, for appellee.

MR. JUSTICE STONE delivered the opinion of the court. This appeal grows out of a proceeding under Article XV of the Probate Act instituted on petition of First National Bank of Belleville as administrator to collect of the estate of Mary Louise Collins, deceased, filed in the probate court of St. Clair county, Illinois, January 25, 1943, under letters issued to it by that court on January 21, 1943, against the respondent, Annie Dekum, on the claim that she had in her possession certain Government bonds of the United States of America belonging to said estate. The cause was heard in that court on March 2, 1943, before the court without a jury, and on March 29, 1943 the court found the title to $7,200 par value United States Treasury Bonds, in the possession of respondent, to be in said estate and ordered her to deliver the same to said administrator to collect.

On appeal from that order to the circuit court of St. Clair county, Illinois, respondent requested a jury

trial. That court ordered the bonds impounded until the final determination of this suit. On May 10, 1943, the last will of said decedent was proved and admitted to record in said probate court and on petition of Edward Collins, surviving husband of said decedent, petitioner appellant was issued letters of administration with the will annexed. Said Edward Collins, on May 17, 1943, filed in said probate court his written renunciation of said will.

The cause was tried in the circuit court June 3 and 4, 1943, and a sealed verdict was returned, June 7, 1943, finding title to said bonds in respondent appellee. Appellant filed motion for an instructed verdict at the close of its evidence, at the close of the evidence of appellee, and again at the close of all the evidence introduced in the cause, all of which motions were denied. On June 11, 1943, appellant filed a motion for judgment notwithstanding the verdict and a motion for a new trial, both of which were denied, and judgment was entered on the verdict and against appellant for costs on July 30, 1943.

This is an appeal from the order of the court of July 23, 1943, denying said motion for judgment notwithstanding verdict and the orders of the court of July 30, 1943, overruling said motion for new trial and entering judgment on the verdict and against appellant for costs.

Mary Louise Collins nee Granery died testate on January 10, 1943, in East St. Louis. She had been married twice. Her first marriage was to John Barnett, from whom she was divorced in April 1940. On March 14, 1941, she married Edward Collins. Mr. and Mrs. Collins were not living together at the time of her death, having separated in August 1941, and he was away considerable of the time before the actual separation occurred. No children had been born to Mrs. Collins, who died at the age of 61 years. She was survived by two sisters and a brother. These sisters

and brother paid little or no attention to Mrs. Collins during her lifetime, particularly in the later years of her life. Much of the time during that period she was ill. They did not do anything to help her and never came to see her. She lived alone, and the respondent herein, who was her cousin, and of about the same age, administered often and over a long period of time to her needs. The respondent lived across the street from Mrs. Collins; they had lived in the same vicinity since childhood and had grown up together. They were apparently very close. Mrs. Collins had access to the Dekum residence, used their telephone, and would often be in Mrs. Dekum's house several times a day. Mrs. Dekum and her daughter often took Mrs. Collins on automobile trips, or for the running of errands. When Mrs. Collins was sick Mrs. Dekum prepared her food, washed, ironed, did the marketing for her, bathed her, ran her errands, gave her medicine, and generally took care of her. This went on for many years, even down to the end of her life. The relations between the two women were apparently most cordial, and many of the neighbors knew about it.

Mrs. Collins' estate was valued at some twenty-five thousand dollars, exclusive of the bonds in controversy. During her lifetime she retained a highly respected lawyer who is now deceased, to handle her business and legal affairs. She consulted him on all matter of things. He drew her will for her.

Mrs. Collins often in the latter years of her life expressed her appreciation of the treatment Mrs. Dekum had given her and her feeling of neglect towards her brother and sisters. Mrs. Collins often talked with her neighbors and friends about the bonds in question, and Mrs. Dekum's relation to them. It is the contention of the respondent that the bonds in question were given to her outright, with the privilege in Mrs. Collins, the donor, of clipping the coupons on said bonds during her lifetime. It is the contention of appellant

that there was no gift *inter vivos;* that elements to constitute such a gift were lacking in the transactions between the two women. Mrs. Dekum had exclusive possession of the bonds for many years, and when Mrs. Collins made and published her last will and testament she made no reference of any kind or character to these bonds.

The relation sustained between the deceased and the respondent, and between the deceased and her brother and sisters lend some foundation to the contention that there was an absolute gift of the bonds in question made to Mrs. Dekum.

The appellant has assigned many errors among which are that the court erred in denying appellant a directed verdict and a judgment notwithstanding the verdict; that improper evidence was admitted against it and that proper instructions were refused, offered on its behalf. Also the refusal of a new trial, and the entering of judgment. All these assignments are refuted by the appellee respondent.

With the setting as it was between these two old ladies and the relations that existed between the testatrix and the natural objects of her bounty, we have to consider what this evidence fairly shows. Some years before her death, either seven or nine,—the time could easily be mistaken, the testatrix delivered to the respondent Mrs. Dekum these $7,200 bonds. She advised her to get a safety box in which to keep them; that she reserved the right to receive the interest on these bonds during her lifetime and did so; clipped the coupons from said bonds from time to time, some of which she used and some of which were found in her lock box after her death. The testatrix told Mrs. Young that Mrs. Dekum had been so good to her that she intended to buy her a house, and as that transaction fell through with she was giving her these bonds. That expression could easily be construed to say, ''I gave her bonds instead of the house,'' in view of the

other statements made by the testatrix as testified to by disinterested witnesses. For instance, testatrix told Mrs. Ruth Klostermeier in 1939, "Ruth, I gave your mother some bonds." She said also that she told her mother to get a box to keep them in, and that Mrs. Dekum had done so and was keeping them at the Union Trust Company. On one occasion the testatrix said to Mrs. Dekum "I would like to go to town tomorrow, and if you can go along with me I would like to cash my interest on your bonds." They did take her to town; they went and got the bonds for her; she clipped the coupons and handed the bonds back to Mrs. Dekum. On another occasion the testatrix told Mrs. Johnson that she was going to take care of Mrs. Dekum and that she had done so. The evidence fails to show that at any time, either when she was clipping the coupons or otherwise the testatrix made any request or any demand or any gesture towards regarding the bonds as her own, but, on the contrary, the conduct of the testatrix fully recognized that the bonds had passed from her ownership to the ownership of Mrs. Dekum. That she could have had them back upon request from Mrs. Dekum seems certain, but this only goes to show that the parties to this transaction fully regarded the gift as consummated and that the bonds belonged to Mrs. Dekum subject to the right of Mrs. Collins to clip the coupons during her lifetime.

This gift was irrevocable. Moreover no attempt was ever made to revoke it. We doubt not from the relations that the evidence shows to have existed between these two old ladies, Mrs. Dekum would have given back to Mrs. Collins the bonds had she requested it, but she never requested it.

We must add to this that with lock boxes in abundance at her command and lawyers to advise her, the bonds still remained in the exclusive possession of Mrs. Dekum, with the knowledge and consent of Mrs. Collins. We must add further that nowhere in her

will did the testatrix mention these bonds. This we regard as a circumstance indicating that in the mind of the testatrix she had long ago disposed of them. It would be strange that if she regarded them as hers or that she had any interest in them, she would not have made some reference to them in her will; at least have advised her executor where the bonds could be found. This may be negative proof, but it seems to us to indicate that the testatrix died in the confidence that she had long ago given these bonds to Mrs. Dekum.

Thus this evidence shows that the bonds were given, that they were delivered, that they were regarded by the donor as the property of the other party, that no attempt was ever made to recover them; that a fair and reasonable construction of all the evidence and facts surrounding the matter, the two women believed and understood and regarded it to be a fact that Mrs. Collins had ceased to own the bonds and that Mrs. Dekum then owned them. This proves a past transaction. It proves an irrevocable gift; it proves possession and it proves in our judgment an understanding and belief and intention in the mind of Mrs. Collins that she had entirely parted with any interest in said bonds and that they were the property of Mrs. Dekum. Here are all the elements of a gift *inter vivos*.

The *Keshner* case, 376 Ill. 354, is very far from describing the state of facts and circumstances such as those above detailed. In the *Keshner* case the testatrix in his lifetime referred to the bonds as his. Mrs. Collins never made an intimation in her lifetime, or in her will, that the bonds in question belonged to her. And she died leaving ample estate to provide for all of her indebtedness, if any, and gifts otherwise.

In view of these facts it seems to us idle to argue that the court should have peremptorily instructed the jury to find the issues for the petitioner, and equally out of the question that the court should have rendered judgment for petitioner notwithstanding the verdict.

We think a court, hearing this evidence standing alone could do nothing else than enter judgment for the respondent; and certainly, if standing alone, and the jury found that the transaction in question was a gift, as the jury did find in this case, the court would be powerless to set it aside as against the manifest weight of the evidence, or on the question of a failure to prove the necessary elements of a gift *inter vivos*. The court ruled correctly in our judgment in submitting this question to the jury.

Opposed to this evidence are some circumstances which do little more than raise some question as to whether the gift was made as this evidence shows. There is some controversy about who rented some lock boxes in the different banks. Counsel for appellant have set great store by an instrument found in Mrs. Dekum's possession. It is in evidence as petitioner's Exhibit 1 and is as follows:

"East St. Louis, Ill.
January 14, 1942

At the request of Mrs. Mary L. Granery Collins we rented a safe deposit box under No. 1043 in the Union Trust Company Bank, East St. Louis, Illinois, for one year, from January 6th, 1942.

I hereby waive any right of access to above mentioned box at any time Mrs. Mary L. Granery Collins desires me to do so.

(signed) Mrs. Frank J. Dekum."

We think a reasonable interpretation of that, waiving of the right of access to that box, was merely a consent by Mrs. Dekum that Mrs. Collins might go there and clip the coupons off of those bonds with or without her. Counsel argue as a circumstance that the keys to Mrs. Dekum's box were found in the possession of the testatrix after her death. We do not regard that as any circumstance tending to show any attempt to recover these bonds. Evidently the jury did not. From the

apparent relations existing between these two old ladies the dearest treasures of either might have been in the possession of the other from time to time. At any rate, all of these circumstances merely presented to the jury whatever they were worth, if anything, intending to dispute the question of the gift, as the evidence shows it had been made. It presented a pure and simple question of fact for the jury. The jury heard the evidence, they saw the exhibits, they were in position to judge the credibility of the witnesses; they did do so and found for the respondent. This was the jury's verdict that they were fully warranted in making under the evidence, but it was their verdict even though it might have been wrong so long as it was not against the manifest weight of the evidence. However, we are of the opinion that under all the facts and circumstances in this case the jury's verdict was correct and should stand unless error entered into the proceeding which would warrant a new trial in this case. We do not find such errors.

Complaint is made of the giving and refusing of certain instructions. The petitioner asked the court to instruct the jury that possession of the bonds by appellee after the death of Mrs. Collins is not sufficient proof of a valid gift. This instruction was properly refused because it contains the suggestion that all other elements to constitute the gift had failed.

It is complained that it was error to accept the evidence of the relations which existed between testatrix and the natural objects of her bounty. We do not think so. If no reference had been made to it it might be a circumstance tending to corroborate the petitioner's theory of this case. It was necessary and proper to lay the foundation by showing that Mrs. Collins had no relatives or other friends but Mrs. Dekum to whom she would naturally wish to give her property.

We are of the opinion that no reversible error enters into this record; that the verdict of the jury and the judgment of the trial court were correct. The judgment of the trial court was correct and in our judgment should be and it is hereby affirmed.

*Affirmed.*