Herman Storr, Executor of Estate of Carl Storr, Deceased, Appellant, v. Hugo Storr, Appellee.

Gen. No. 10,073.

Opinion filed November 4, 1946. Released for publication December 10, 1946.

BELL, FARRAR & SCOTT, of Rock Island, for appellant, EARL L. SCOTT, of Rock Island, of counsel.

WILLIAM B. SCHRODER and WITTER & WALKER, all of Rock Island, for appellee.

Mr. Justice Bristow delivered the opinion of the court.

This is an appeal from a judgment of the circuit court, denying a petition filed by Herman Storr, executor of the estate of Carl Storr, deceased, for the issuance of a citation under article XV of the Probate Act (Ill. Rev. Stats. 1945, ch. 3, par. 335 [Jones Ill. Stats. Ann. 110.432]) to recover property from Hugo Storr.

The petition alleged that Hugo Storr, son of Carl Storr, hereinafter referred to as the deceased, and brother of Herman Storr, the executor, was wrongfully withholding certain money received by him on behalf of the deceased on account of the sale of real estate owned by the deceased, and prayed that Hugo Storr be examined to show cause why he should not be required to give up the said property to the executor.

The case was tried by the probate court, along with a claim against the said estate by Marie Storr, wife of the said Hugo Storr. The probate court entered a decree dismissing the petition for citation on the ground that the money claimed by the executor was not the property of the deceased at the time of his death, and approved the claim of Marie Storr. Whereupon, the executor perfected appeals from both of these rulings to the circuit court, where the cases were heard together in a trial *de novo* before the court without a jury. The circuit court held that there was no evidence in support of the allegations in the petition, and dismissed the same. From this judgment the executor appeals.

The material and relevant facts appearing in the record indicate that in December 1943, Carl Storr, the deceased, went to live at the home of his son, Hugo, and the latter's wife, Marie. At this time the attending doctor urged the deceased to go to a hospital, inasmuch as he had lost control of his functions, and

needed vigilant care. The doctor testified that he informed the deceased that he would refuse to ask Marie Storr to give the deceased the kind of care that would be required, unless she would be compensated therefor. The deceased replied that he would, "take care of it," and further stated, "I am going to do something for this boy. I owe something to him, too. I have done something for the others, and I am going to do something for this boy, too."

Marie Storr agreed to, and did perform all necessary services for the deceased until the date of his death some four months later.

About the end of January 1944, it was agreed between Herman Storr, who took charge of the financial affairs of his father since the death of the mother in 1942, and Hugo Storr, that the deceased would pay $5 per week for room and board. Two checks in the amounts of $20 and $25.75, respectively, were paid pursuant to this arrangement.

On February 3, 1944, the deceased made his will, in which specific legacies were given to three of his children, Lottie, Charles and Henry. He named as residuary legatees, Charles, Herman and Hugo. At the time deceased made the will, he told his lawyer, Clyde Walker, one of the witnesses herein, that he was trying to equalize his gifts between his children, but that "he had some things to do that he was going to do that he didn't put in the will, and that he would do those right away."

On or about March 1, 1944, negotiations for the sale of a four acre tract of land owned by Carl Storr (the sale proceeds of which are in dispute in the instant case) were entered between the deceased, through his attorney, the aforementioned Clyde Walker, and James Walters. The sum of $50 was paid by Walters to "hold the deal" and deposited to the account of Carl Storr.

During the middle of March 1944, the deceased was visited by Perry E. Cherry, a friend of the family's,

and in the course of the conversation Mr. Cherry stated, "It's nice for you to be here with Hugo, rather than living out there alone now that your wife is gone." The deceased replied, "Yes, this is all right; Hugo and his wife are doing all they can for me." Mr. Cherry further stated, "How is the old place?" The deceased returned, "I sold it to Herman. I am going to give the acreage to Hugo."

Over objection, Hugo Storr testified that he had two conversations with his father during the month of March with reference to the proceeds from the sale of this acreage, in which the deceased stated that as soon as Walters paid for the land Hugo Storr could have the money.

On April 5, 1944 the sale of the land was finally consummated, when the purchaser gave the attorney a check for $2,000. The latter turned over the deed, and made out a blank check for $1,975 which he took to the home of Hugo Storr, where the deceased was residing. Upon his arrival he found the deceased ill and asleep and, thereupon, informed Hugo Storr that he had the money for the land. Hugo Storr replied, "That is fine; it is mine anyhow." The attorney then explained, "I will make this check out to you, because you will have to go to the bank anyhow." He put Hugo Storr's name on the check, and did not disturb the deceased.

Over objection, Hugo Storr testified that when his father awakened, about twenty minutes later, he went into the room and told his father that he had the check. The deceased saw the check, and said, "That is fine; that is yours," or "that belongs to you."

On April 8, 1944, defendant, Hugo Storr, deposited the money to his own active account at the bank. Within a very short time thereafter Carl Storr died, and his will was filed for probate on April 26, 1944.

On the basis of the foregoing testimony and circumstances the circuit court dismissed the petition for the issuance of a citation to recover assets from Hugo

Storr. The court held, in an opinion filed in this record, that the petitioner failed to prove by a preponderance of evidence that the money received from the sale of the real estate, and in the possession of Hugo Storr at the date of the death of Carl Storr belonged to the latter's estate.

The sole question presented by this appeal is whether or not the circuit court erred in dismissing the petition for citation.

In determining this issue, and in reviewing the evidence submitted thereon, it is necessary first to consider the nature and purpose of article. XV of the Probate Act under which the petition is filed. (Ill. Rev. Stat. 1945, ch. 3, par. 335 *et seq.* [Jones Ill. Stats. Ann. 110.432 *et seq.*]).

■■ The legislature has provided therein a summary remedy for the recovery of property and the discovery of information. Its primary purpose is to discover assets of estates, and the court is authorized therein to make such orders as the case may require. Horner, Probate Practice, ch. 42, § 1075, *Martin v. Martin,* 174 Ill. 371; *Keshner v. Keshner,* 376 Ill. 354. The proceeding is purely statutory, and is neither at law nor in equity. It bears the equitable aspects of a bill of discovery, while at the same time providing for an optional jury as at law, on demand of the parties where questions arise concerning claims of adverse title or interest, as in the instant case.

With reference to the nature of this proceeding, the Supreme Court of Illinois stated in *Keshner v. Keshner,* 376 Ill. 354, 359:

"We have thus an anomalous proceeding and the peculiar nature of this kind of suit has a distinct bearing on the decision of this case."

■ ■ At a hearing on a petition for a citation the court, moreover, may examine the respondent under oath and may hear the evidence offered by any party. It is discretionary with the court, however, whether or not the respondent shall be permitted to testify, and

the witnesses are deemed those of the court and not witnesses of the executor or administrator, no matter by whom they are examined. *Keshner* case, *supra; In re Estate of Halaska,* 307 Ill. App. 176.

In the citation proceeding in the instant case, plaintiff is seeking to recover certain proceeds from the sale of real estate owned by the deceased, and defendant contends that he is the rightful owner thereof by virtue of an *inter vivos* gift from the deceased.

It is established by the weight of authority in this State that mere possession is not enough to establish a gift under the law, and any statements appearing in *Martin v. Martin,* 174 Ill. 371, from which a contrary ruling might be interpreted, have been limited and defined by the court in *Rothwell v. Taylor,* 303 Ill. 226.

Proof of a gift must be by clear and convincing evidence. *Rothwell* case, *supra,* at p. 230; *Keshner v. Keshner,* 376 Ill. 354, 362; *Merchants Loan & Trust Co. v. Egan,* 222 Ill. 494.

From the record it appears that Carl Storr sold, through his attorney, Clyde Walker, certain real estate to one James Walters; that at the time of such sale Carl Storr was bed-ridden; that when the attorney came to deliver the check representing the proceeds from the sale, the said Carl Storr was asleep, and the check was, therefore, made payable to Hugo Storr, inasmuch as he would have to go to the bank in any event. Moreover, Hugo Storr stated to the attorney that the money was to be his anyhow, for his father had told him in two prior conversations while the sale was pending that the proceeds from the sale of this property would go to him.

It appears further from the record that when Carl Storr awakened, the said Hugo Storr showed him the check, and the former stated, "That is fine; that is yours." Thereupon Hugo Storr deposited the check to his own account in the bank.

The foregoing testimony of an *inter vivos* gift from father to son of the proceeds in controversy is corroborated and substantiated by the following facts and circumstances submitted in the evidence offered by three of the witnesses.

About four months prior to his death the deceased went to live with his son, Hugo Storr and the latter's wife, Marie Storr. At that time he was advised by his doctor that he needed hospital care, and that his daughter-in-law could not be asked to perform the duties required by his condition unless compensation were paid for such services. In response to this advice, the deceased stated that he would do something about it and added further, "I am going to do something for the boy; I owe something to him, too. I've done something for the others and I'm going to do something for this boy, too."

These circumstances clearly indicate that the defendant Hugo and his wife performed difficult and self-sacrificing services for the deceased during the last months of his life. They indicate further that the deceased realized all that was being done for him and intended to show his appreciation to his son.

Moreover, at the time deceased made his will, he stated to his attorney that he had some things to do that he did not put in the will, but which he was going to do right away. The legitimate inference from this statement taken together with the further fact that by the terms of the will Hugo Storr did not receive any specific bequests as did three of the other children, but was merely named as one of three residuary legatees, is that the deceased intended to make a gift to this son to whom he felt indebted.

This conclusion is further evident from his statements to the witness, Perry E. Cherry, a friend of the family's, that "Hugo and his wife are doing all they can for me," and, "I am going to give the acreage to Hugo."

On the basis of these circumstances weighed together with the defendant's testimony that his father promised the money to him and actually told him that the check for the proceeds was his, the probate court and the circuit court both concluded that the deceased intended to make, and did make, during his lifetime a valid gift of the proceeds from the sale of the real estate to his son, Hugo Storr, and that, therefore, this money did not constitute an asset of the estate of the deceased.

The courts were both acting as triers of fact without a jury, and they saw and heard the witnesses. Both courts had, therefore, advantages which an appellate tribunal does not possess in judging the weight to be given to the testimony and in determining whether a gift has been established by clear and convincing evidence.

In *Schwaan v. Schwaan,* 320 Ill. App. 287, 295, the court stated in affirming the denial of a petition for citation:

"The witnesses appeared before the judge of the probate court and also before the trial judge in the superior court. Both had opportunities to observe their demeanor upon the witness stand, and to consider all of the facts and circumstances as brought out by the evidence. The decision of a trial judge upon matters of fact cannot lightly be set aside."

The plaintiff in the instant case, however, argues that the decision of the circuit court should be reversed on the ground that there is no evidence of a gift of the sale proceeds by the deceased to his son, and advances the following theory of statutory interpretation.

Plaintiff contends that inasmuch as this proceeding determined the right and title to the property in question, and, therefore had an adverse aspect, it is the same as any other suit to try title, and hence the testimony of Hugo Storr pertaining to conversations with the deceased were barred under section 2 of the Evi-

dence Act [Ill. Rev. Stat. 1945, ch. 51, par. 2; Jones Ill. Stats. Ann. 107.068]. Without such testimony, it is urged, the defendant fails to establish a gift by such clear and convincing evidence as the law requires.

In support of this theory plaintiff cites the case of *In re Estate of Halaska,* 307 Ill. App. 176, where it was held that in a citation proceeding the trial judge did not abuse his discretion by requiring one who claimed money as a gift to testify as to her possession of the money, but excluding her testimony as to conversations with the deceased which would have established that the money had been received as a gift.

It is the opinion of this court that a statement that a particular ruling did not constitute an abuse of discretion cannot be construed as a pronouncement of approval of that ruling as a principle of law. Nor can it be relied upon as an authority for the proposition that the admission of the evidence by the court would have constituted reversible error, which in effect, is what plaintiff is asking this court to rule.

In *Keshner v. Keshner,* 376 Ill. 354, 362, the Supreme Court of Illinois apparently accepted the testimony of conversations with the deceased in a citation proceeding, and stated that such testimony must be weighed with all other evidence appearing in the case—which is precisely what the circuit court did in the instant case. In the *Keshner* case, however, the testimony pertaining to conversations with the deceased was unsupported by other evidence and there was some evidence that the interpretation of a gift would defraud the creditors, hence the court held that it was insufficient to prove a valid gift.

Moreover, the court in the *Keshner case, supra,* refused to apply the ordinary rules applying to adverse witnesses to citation proceedings on the ground that the witnesses were those of the court. The court stated at p. 362:

"It cannot be said in this case that the testimony of the widow and daughter must be evaluated by the ordinary rules applying to adverse witnesses. They were not witnesses of the creditor or executor, but of the court, and no matter by whom they were examined, the creditor could not be bound by their testimony nor be held to have vouchsafed for its truthfulness. To apply such a rule to this proceeding would be to destroy its usefulness in the administration of estates, and completely thwart the very purpose for which the statute was enacted."

In the instant case, this court cannot accept the statutory analysis and the application thereof advanced by the plaintiffs. In this proceeding under article XV of the Probate Act the witnesses are, under the terms of the statute and by virtue of the interpretation thereof by the Supreme Court, witnesses of the court, and therefore cannot qualify as witnesses under the terms of section 2 of the Evidence Act. If the court were automatically barred from eliciting information deemed material in the discovery of assets belonging to estates, one of the objectives of the statute would be defeated.

The defendant, Hugo Storr, testified as a witness of the court and it was within the discretion of the trial court to determine the propriety and admissibility of his statements pertaining to conversations with the deceased, and the admission thereof by the trial court does not constitute reversible error.

It was, furthermore, the province of the trial court to weigh that testimony together with all the other evidence and circumstances appearing in the case and determine whether the property in question belonged to the estate of the deceased. The court's finding on that issue may not be upset unless it is against the manifest weight of the evidence.

This court is of the opinion that the findings of the circuit court that the proceeds from the sale of

the real estate did not constitute property belonging to the estate of Carl Storr were in accord with the facts and circumstances submitted in the evidence presented in this record. Therefore, there was no error in the dismissal of the petition for the issuance of a citation to recover assets from the defendant Hugo Storr. The judgment must, therefore, be affirmed.

*Judgment affirmed.*