In re Estate of Maxwell M. Jones, Deceased. Lucy E. Jones, Administratrix of Said Estate, Appellant, v. Anna S. Jones, Appellee.

Gen. No. 37,021.

Heard in the second division of this court for the first district at the October term, 1933. Opinion filed May 1, 1934.

Irvin I. Slan and D. W. Elliott, for appellant.

Raymond J. Kehoe and Emil J. Benson, for appellee; Kehoe, O'Rourke, Kehoe & O'Connor, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

On May 4, 1933 on appeal from the probate court of Cook county, *in re* citation of Anna S. Jones on the

petition of Lucy E. Jones as administratrix of said estate, and after a trial *de novo* without a jury, the circuit court entered the following order or judgment: "That the order of the probate court that Anna S. Jones turn over and deliver to Lucy E. Jones, Administratrix of said estate, certain property described therein be reversed, and set aside, and the petition for citation be dismissed." It is sought by the present appeal of said administratrix to reverse the judgment.

It appears that when the matter was tried *de novo* in the circuit court, another controversy between the same parties was tried at the same time *de novo,* arising on the claim of Anna S. Jones against the estate for $10,000, previously filed in the probate court and which claim that court had allowed to the extent of $2,500. And on said May 4, 1933, the circuit court, as to said claim of $10,000, entered the following separate order or judgment: "That the claim of Anna S. Jones against said estate, in the sum of $10,000, be *entirely disallowed.*" From said last mentioned judgment Anna S. Jones prayed for and was allowed a separate appeal to this court, but she did not here perfect it and, apparently, it has been abandoned. Some of the evidence heard by the circuit court, while relating more particularly to the claim of $10,000, has a bearing upon the matters involved in the present appeal.

It further appears that on January 29, 1928, Maxwell M. Jones died intestate; that on January 31, 1928, his widow, Lucy E. Jones, was appointed administratrix of his estate; and that besides Lucy E. Jones he left him surviving two daughters, Florence and Alice Jones; a son, Harold R. Jones; a sister, Anna S. Jones; and a brother, Harry Jones.

The record does not contain the petition filed by the administratrix for the citation against Anna S. Jones, but from the certified transcript of the clerk of the probate court in the record it appears that on January 30,

1929 (about a year after letters of administration were issued), Anna S. Jones filed a claim against the estate for $10,000, based upon a purported check of Maxwell M. Jones, payable to her order, drawn on the Harris Trust and Savings Bank and dated Chicago, January 26, 1928 (three days before his death); that on July 22, 1930, the administratrix filed her petition under sections 81 and 82, as amended in 1925, of the Administration Act (Cahill's St. 1931, ch. 3, ¶¶ 82, 83, p. 64), to recover certain certificates of stock in several corporations, which certificates were then in the possession of Anna S. Jones, upon the theory that the stocks were assets of the estate; that a citation was issued and served upon Anna S. Jones; that she appeared and filed an answer to the petition; and that on August 6, 1930, after a hearing upon the petition and her answer thereto, as well as upon her claim against the estate for $10,000, the probate court entered an order which, after various recitals, is in substance as follows:

That the court finds that the estate is indebted to Anna S. Jones on her claim of $10,000 to the extent of $2,500, and the claim is allowed to that extent, to be paid in due course of administration, but the balance of the claim, $7,500, is disallowed.

And the court further finds that Anna S. Jones has in her possession or under her control certain certificates of stock (numbers of the certificates given), which she has refused to turn over to the administratrix after demand therefor, as follows:

125 shares of Libby, McNeil & Libby stock,
3000 shares of Nacosari Copper stock,
65 shares of National Leather stock,
1500 shares of Alaska Juneau stock.

And the court orders that Anna S. Jones, on or before 20 days, turn over and deliver to Lucy E. Jones, as administratrix, the said stock.

From this order of the probate court three separate appeals were prayed and perfected in the circuit court, one by Anna S. Jones because of the allowance of only $2,500 on her claim; another by the administratrix because of the allowance of $2,500 on the claim, she urging that the claim should have been disallowed *in toto;* and the third by Anna S. Jones from that portion of the order directing her to deliver to the administratrix said stocks. Thereafter, by agreement of the parties, the three appealed cases were consolidated in the circuit court and there heard from time to time as one cause before the court without a jury, commencing on February 17, 1933. The principal witness for the estate was Lucy E. Jones, widow of the deceased, and the other witnesses for the estate, on the issue whether the stocks in question belonged to Anna S. Jones or were assets of the estate, were Florence Jones and Harold R. Jones (daughter and son, respectively, and heirs at law of deceased) and Mrs. Lillian Purkey (a nurse, who testified to certain conversations she overheard between Anna S. Jones, Lucy E. Jones and Florence Jones concerning certain stocks shortly after the death of deceased). Certain writings were offered by the administratrix and admitted in evidence, but certain letters, written during March, 1933, and passing between Lucy E. Jones and certain officers of the corporations which respectively had issued the stocks were refused admission,—and properly so in our opinion. On behalf of Anna S. Jones several witnesses testified, but their testimony is not properly abstracted, and, indeed, the testimony of some is not abstracted at all by appellant and we have been obliged to examine the record. Anna S. Jones, over 60 years of age, and who lived at Geneva, Illinois, did not testify as a witness, nor was her deposition taken. As a reason for this, her attorney stated that she had been and was too ill, and he presented to the court a doctor's cer-

tificate, dated March 1, 1933, which stated *inter alia*: "as her physician I have forbidden her to do anything which will cause her any harm, as I feel it might cause her death." Numerous writings, however, were offered and received in evidence in her behalf. These included five bills of sale to her of some, if not all, of the stocks herein involved, signed, witnessed and acknowledged by Maxwell M. Jones during December, 1921, or December, 1922 (several years before his death). The witnesses to these writings were called and testified that said Jones' signatures thereto were genuine. Their testimony was undisputed. In some of the writings it is stated that the accompanying certificates of stock *are indorsed in blank* by said Jones. From certain court records of the circuit court of Kane county, Illinois, introduced in evidence after identification by the clerk of that court when called as a witness, it appears that in December, 1929, Lucy E. Jones, as administratrix, there commenced a law action against Anna S. Jones on the latter's note for $1,000, payable on demand to the order of Maxwell M. Jones and dated "December 27, 1919." The administratrix subsequently dismissed her said action, but it appears from the note attached to the declaration that the consideration for it is "500 shares Alaska-Juneau Gold Mining Co. stock," and that on its face over the signature of the *payee* at the lower left-hand corner is the statement "Guaranteed against Decline." At the conclusion of all the evidence the circuit judge, before entering the order appealed from as first above mentioned, delivered a lengthy opinion which is contained in the record.

In the opinion the circuit judge first considered the appeal of the administratrix concerning the claim of Anna S. Jones against the estate, based upon the purported check of Maxwell M. Jones, payable to her order for $10,000, the original of which had been intro-

duced in evidence and is contained in the record. After discussing the evidence bearing upon the question whether the check bore the genuine signature of the deceased, the judge concluded that, considering all the evidence and the actual appearance of the signature, said evidence "fails sufficiently convincingly to prove that said check is or was signed by the late Maxwell M. Jones," and directed that an order be drafted and entered "entirely disallowing" said claim.

In the opinion the judge next considered the separate appeal of Anna S. Jones from the order of the probate court that she deliver to the administratrix of the estate the said stocks mentioned in said order. And the judge, after mentioning the members of the Jones family left surviving upon the death of Maxwell M. Jones, stated that "neither Anna S. Jones, the claimant for the $10,000 in stocks, nor Harry Jones, a brother of deceased, testified"; that "it may be said incidentally that Anna S. Jones would have been ineligible as a witness to testify in regard to her claim for $10,000 owing to the inhibition of section 2 of the Evidence Act"; and that "as to the fact that she did not testify in regard to the stocks as to facts stated by others to have occurred after the death of said deceased, it was claimed by her counsel that she was ill and in support thereof there was introduced a doctor's certificate," etc. After detailing at length the testimony of the witnesses, Florence Jones, Lillian Purkey, Lucy E. Jones and Harold R. Jones (all called by the administratrix), as to their respective versions of various conversations had after the death of the deceased relative to "stocks," in which conversations it was claimed Anna S. Jones made certain statements relative to certain stocks in her possession, the judge further stated in the opinion:

"The evidence that Anna S. Jones said that the property was that of deceased is chiefly all by inter-

ested parties. Then, too, it is generally vague. All taken together it shows rather loose talk about the subject than anything convincingly definite. It shows it became a controversial matter. Of course, the note attached to the declaration, filed in the suit by *Lucy E. Jones,* as administratrix, *v. Anna S. Jones,* is undisputed, and is sufficient evidence that 500 shares of the Alaska stock was legally owned by Anna S. Jones on December 27, 1919. It even purports to contain a guarantee against decline in the value of the stock, signed by deceased. It seems to show the solicitude of deceased for his sister.

"All the testimony of the witnesses seems to be weakened as far as the Alaska Juneau Stock is concerned. At the death of Maxwell M. Jones, the widow and children may have thought that the sister of deceased ought to turn over the stocks because they once belonged to him; and that may have inspired an inclination on her part to talk about giving them up. But, certainly, with a bill of sale of the six certificates, totalling 500 shares of Alaska Juneau stock, in her possession, signed by her brother, and an outstanding note of $1,000, (reciting that it was given by her to him on December 27, 1919, as a consideration for the 500 shares of said stock), and with no countervailing evidence of any kind, the conclusion is irresistible that at the time of her brother's death she was, as against the rights of his estate, the absolute owner and rightfully in possession of said 500 shares of stock.

"The burden of proving by a preponderance of the evidence that the stocks in question belonged to the deceased at the time of his death *was upon the estate.* It is true that there is evidence of confusing statements made by Anna S. Jones, but when all the evidence on the subject is critically examined and weighed, and the striking evidence as to the Alaska Juneau stock borne in mind, it does not seem reason-

able to hold that the estate has sufficiently shown that it is entitled to the stocks."

And the judge, as to the appeal bearing upon the question of the present ownership of the stocks, directed that an order be drafted and entered to the effect that "the order of the probate court that Anna S. Jones turn over and deliver to Lucy E. Jones, administratrix of said estate, certain property described therein be reversed and set aside and the petition for citation be dismissed." Thereafter on May 4, 1933, the order or judgment appealed from was entered as first above mentioned.

After reviewing the evidence and the holdings of the trial judge as stated in his opinion, and after considering the arguments of opposing counsel as made in their briefs as well as upon oral argument, our conclusion is that the order or judgment of the circuit court is amply sustained by the evidence and the law. No useful purpose will be served in here detailing the testimony, as to the claimed conversations had with Anna S. Jones concerning the stocks involved, of the estate's witnesses, Lucy E. Jones, Florence Jones and Mrs. Purkey. Suffice it to say that after considering all of their testimony, as well as that of Harold R. Jones, which is not favorable to the estate, we agree with the circuit judge's conclusion, as stated in his opinion, that "it does not seem reasonable to hold that the estate has sufficiently shown that it is entitled to the stocks."

The main contention as a ground for a reversal of the judgment, urged by the estate's counsel, is in substance that, as this is a proceeding originally instituted in the probate court under amended section 81 of the Administration Act, Cahill's St. ch. 3, ¶ 82, whereby Anna S. Jones was cited to appear and to in effect "show cause" why she should not deliver up the stocks in question, the burden of showing that at

the time of the death of the deceased she was the owner of said stocks rested upon her, and that she did not maintain that burden. We cannot agree with the contention. We think that the trial judge was correct in his holding that "the burden of proving by a preponderance of the evidence that the stocks belonged to the deceased at the time of his death was *upon the estate.*" (See *Mohlke v. People,* 117 Ill. App. 595, 599; *Martin v. Martin,* 174 Ill. 371, 373.) In the *Martin* case it is said (italics ours):

"On the hearing in the circuit court the executors . . . voluntarily, and properly, as we think, assumed the position of petitioners or complainants and the defendant in error the position of defendant.

"The petition averred that the notes in question were in the possession of the defendant in error under the claim they were her private property. The law will not require one in the possession of a chattel or security, negotiable or otherwise, under claim of ownership, to deliver the same over upon the mere adverse claim of another, but will only disturb such possession upon proof of the right of such adverse claimant,— that is to say, the presumption of the law is that one so in possession is *prima facie* entitled to remain in the possession until the contrary is made to appear by proof. *Any other rule would require every citizen to yield to the mere assertion of another.* It therefore became incumbent upon the petitioning executors, in order to obtain favorable action upon the part of the court, to introduce such proof as would warrant an order that the defendant in error should deliver up possession of said notes. This they essayed to do."

In the subsequent case of *Rothwell v. Taylor,* 303 Ill. 226, 231, in commenting upon the decision and holdings in said *Martin* case, our Supreme Court says: "The decision of the case was correct, for other proof than possession of the donee warranted the conclusion that the donor delivered the notes to the donee with

intent to pass the title thereby." There is such other proof in the present case.

Counsel for the estate also contend in substance that because it does not appear from the evidence that (after Maxwell M. Jones in his lifetime had by bills of sale sold and transferred the stocks to Anna S. Jones) such sales and transfers had been noted or registered on the books of the respective corporations which had issued the stocks, the title to the stocks never passed to Anna S. Jones. In our opinion the contention is without merit. In 12 Fletcher's Cyclopedia on Corporations (Permanent Edition, 1932), § 5496, it is said: "Even where the charter or by-laws of a corporation, or the general law under which it is organized, provide that its stock shall be transferable only on the books, it is well settled that as between the parties, an unregistered transfer is valid. . . . The entry of the transfer on the books is not necessary for the translation of the title, or, in other words, *as between the parties* the title passes by contract and not by the record. . . . An unregistered transfer is also good as against all persons *standing in the shoes of the transferor,* as, for example, his executor or administrator, or his heirs, . . . " Numerous adjudicated cases are cited by the author in accompanying notes in support of the text, including the case of *Hogg v. Eckhardt,* 343 Ill. 246. In that case it is said (p. 252): "The law has been generally established that as between the parties the transfer of stock by delivery of the certificate, with power of attorney or endorsed in blank, passes title without the transfer on the books of the company." (Citing two prior Illinois cases.) And it is also said in the case (p. 253): "Possession of stock certificates endorsed in blank is *prima facie* evidence of ownership in the possessor, and the burden of producing evidence on the question of ownership rests upon the person disputing such ownership." (Citing *Hogg v. Holmann,* 323 Ill. 545,

554, 555.) In the present case it appears from the bills of sale introduced in evidence that as regards some of the stocks the certificates bore the indorsement in blank of Maxwell M. Jones by signature made several years prior to his death.

For the reasons indicated the judgment of the circuit court of May 4, 1933, should be affirmed and it is so ordered.

*Affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.