In the Matter of Estate of Charles W. Waggoner, Deceased.
Shelby County State Bank of Shelbyville, Illinois et al., Administrators, etc., Petitioners, v. Clara M. Aichele et al., Respondents.
Shelby County State Bank of Shelbyville, Illinois, and John J. Smith, Sr., Administrators of Estate of Charles W. Waggoner, Deceased, Petitioners-Appellees, and Clara M. Aichele and William F. Aichele, Respondents-Appellees, v. Nelle F. Waggoner, Respondent-Appellant.

Gen. No. 9,989.

Third District.

February 18, 1955.

Rehearing denied March 29, 1955.

Released for publication March 29, 1955.

Arthur J. Steidley, of Shelbyville, and J. E. Horsely, of Craig & Craig, of Mattoon, for respondent-appellant; J. H. Anderson, of Craig & Craig, of Mattoon, of counsel.

Edward C. Eberspacher, of Shelbyville, for respondent-appellee.

MR. JUSTICE HIBBS delivered the opinion of the court.

This is an appeal by Nelle F. Waggoner from a judgment of the circuit court of Shelby county finding that forty shares of the capital stock of Shelby County State Bank of Shelbyville, Illinois, represented by certificate no. 177 is the property of appellee, Clara M. Aichele.

The Shelby County State Bank and John J. Smith, Sr., administrators of the Waggoner estate, filed a petition in the county court of Shelby county alleging on information and belief that prior to March 1, 1944 the decedent was the owner of forty shares of the capital

stock of the Shelby County State Bank, evidenced by certificate no. 177, and on the latter date, he delivered the same to W. F. Aichele, cashier of the bank, with authority to transfer said stock on the books of the bank to his wife, Clara M. Aichele, sister of the decedent; that although the certificate had been in the possession of Aichele, the decedent continued to collect the dividends on the stock and voted the same until the time of his death. The petition further recited that the decedent left him surviving his wife, Nelle F. Waggoner and eight brothers and sisters as his sole and only heirs at law, by virtue of which the widow became the owner of all the personal property of the decedent after the payment of all his debts. The petition prayed that a citation issue requiring the widow, and Aichele and his wife, Clara, to appear and answer the petition, and that the court ascertain and determine whether the certificate was a valid gift to Clara Aichele or was an asset in the estate of the decedent.

The respondents, Aichele and wife, answered, claiming that Mrs. Aichele was the owner of the certificate as a result of a valid gift during the lifetime of the decedent. The widow, by her answer, alleged that the gift was not a completed one and prayed that the court find that the certificate was an asset of the estate of her deceased husband.

The county court by its judgment found that there was no valid gift and the certificate was the property of the administrators. On appeal to the circuit court of Shelby county, judgment was entered finding that the certificate was the property of Mrs. Aichele.

Charles W. Waggoner died January 30, 1953 leaving him surviving as his heirs, his widow, Nelle F. Waggoner and four brothers and four sisters, including the respondent, Clara Aichele. At the time of his death, he was the owner of over four hundred acres of land in Shelby county and possessed over $200,000 in personal

property. Part of the personal property consisted of an interest in a clothing store, forty shares of stock in the Shelby County State Bank, of which he was a director, acquired a considerable period of time before December 1943. Aichele was elected a director of the bank in 1940. He was in 1944 its cashier and since 1946 has been its cashier and trust officer, and as such officer, it was a part of his duty to make transfers of certificates of stock on the books of the bank.

In December 1943 the bank declared a 100 per cent bank stock dividend, as a result there was issued to the decedent, certificate no. 177 representing forty shares of its stock. Shortly thereafter the decedent said to his sister in his clothing store in the presence of her daughter, Hope: "Sis, you would like to have some bank stock, wouldn't you? That's a good place to put it. Will is there and he can take care of it for you, and I think that that is a good place to put it." The daughter's recollection was that the deceased said to her mother: "You would just as soon have bank stock, wouldn't you?" That her mother mumbled something and moved away, and her uncle said: "Well, you would, wouldn't you?"

On March 1, 1944, decedent came into the bank, either just before or after closing hours and said to his brother-in-law, Aichele: "I want Sis to have this," and handed over certificate no. 177 issued to him as a stock dividend. Waggoner signed the assignment in blank on the back thereof. The other blanks were never filled in. Thereupon at the decedent's request Aichele prepared a document in the following words: "This is to certify that I have delivered to W. F. Aichele, certificate 177 for 40 shares of stock of the Shelby County State Bank, and authorize him to transfer said stock on the books of the bank to Clara M. Aichele." Waggoner signed the instrument and it was clipped on the stock

certificate and placed by Aichele in his safety deposit box in the bank where it remained continuously until this cause was tried in the county court. At the time of the demise of Waggoner, Aichele had bonds in this same box payable to the deceased or to his various brothers and sisters, including Mrs. Aichele. The latter had access to the box and possessed one of the keys thereto, but at no time before her brother's death, did she know that this certificate of stock was in the bank box or was she advised of the transaction which occurred between her brother and her husband at the bank on March 1, 1944. In 1946 Waggoner told one of his fellow directors that he had delivered a certificate for forty shares of bank stock to Aichele for his sister, Clara.

Although the relationship between the decedent, Aichele and the decedent's sister, Clara was intimate, the subject was never discussed between them or any two of them subsequent to March 1, 1944. The decedent continued to receive all dividends declared upon this particular forty shares of stock and voted the same at all stockholders' meetings up to the time of his demise.

There is no conflict in the testimony on the material facts in the case. Whether such facts justify a conclusion that a valid gift inter vivos was made by constructive delivery is the question at issue.

It is insisted by appellees, William F. Aichele and Clara M. Aichele, that the burden of proof rested upon the petitioners to establish by the greater weight of the evidence that the asset, viz., the forty shares of stock, was the property of the estate of the decedent. In support of that contention they rely on In re Estate of Jones, 274 Ill. App. 616 and Hogg v. Eckhardt, 343 Ill. 246. In the former case the petition alleged that the respondent was in possession of certain securities, including certificates representing shares of stock, which

the administrator contended were assets in the estate of the decedent. In Hogg v. Eckhardt, supra, it appeared that the decedent in his lifetime endorsed in blank certain certificates of stock and delivered them to the donee, and such certificates were in the possession of the donee at the time the administrator filed a bill of complaint for their recovery.

 It is true that in this proceeding the administrators filed a petition praying that a citation issue requiring the respondents, the widow of the decedent, and Clara M. Aichele and her husband to appear and answer the petition, and that an order be entered finding either that the certificate was a part of the assets of the estate of the decedent or was the property of Clara M. Aichele. It is also true that the administrators in the trial of the cause proceeded as the moving party. However, the petition failed to allege that Clara M. Aichele was personally in possession of the certificate and the proofs show that she never did have possession thereof in person.

 The question involved here is whether Clara M. Aichele's husband was in possession of the certificate as agent or trustee for his wife, which would constitute a completed delivery of the gift, or as agent for Waggoner, whose authority terminated upon his death. The reason announced in In re Estate of Jones, supra, at page 624, as the basis for the rule there announced is that "The law will not require one in the possession of a chattel or security, negotiable or otherwise, under claim of ownership, to deliver the same over upon the mere adverse claim of another, but will only disturb such possession upon proof of the right of such adverse claimant,—that is to say, the presumption of the law is that one so in possession is prima facie entitled to remain in the possession until the contrary is made to appear by proof. *Any other rule would require every citizen to yield to the mere assertion of another.*"

136

In the case at bar, the real question at issue is whether there was a constructive delivery of the security by reason of the acts and conduct of the parties involved. Under these circumstances it is our belief that the cases cited by appellee are not applicable.

■ The essential characteristics of a gift inter vivos are stated in In re Estate of Meyer, 317 Ill. App. 96, where it is said at pages 101 and 102: "To constitute a gift inter vivos there must be a delivery of the property and a parting with all present and future domination over it, and it is essential to the validity of the gift that it be absolute and irrevocable. It is not essential that the delivery be made directly to the donee but a valid delivery may be made to a third party for the donee. The delivery, however, must be with the intention of vesting the title absolutely and irrevocably in the donee and the donor must relinquish all present and future dominion and power over the subject matter of the gift. If the gift is not completed during the lifetime of the donor his death revokes the part which has been performed. There must be the intention of making a gift, but intention alone, that the donee shall have the property does not make a gift. The delivery of the subject of the gift into the possession of the donee or some third person for his benefit is essential, and the delivery must be with the intention of vesting the title and the immediate right of possession of the property in the donee or it will be insufficient. (Hopkins v. Hughes, 340 Ill. 604, 610–611; Kelly v. Dyer, 359 Ill. 46; Northern Trust Co. v. Swartz, 309 Ill. 586; Rothwell v. Taylor, 303 Ill. 226.) If the delivery is absolute and unconditional, so that the gift takes effect at once, the assent of the donee may be implied. (Taylor v. Harmison, 179 Ill. 137, 141.)

■ "Where delivery is made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon

137

whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee. And this is to be determined from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto as disclosed by the evidence. On a delivery to a third person as the agent of the donor, the gift is not complete, and the death of the donor before the delivery to the donee works a revocation of the gift, but by delivery to one as the agent of the donee an irrevocable gift is made, which is not affected by the death of the donor before the property comes into the hands of the donee. (Jennings v. Neville, 180 Ill. 270; Trubey v. Pease, 240 Ill. 513; Telford v. Patton, supra; 28 C. J. 640, sec. 32; 12 R. C. L. 935, sec. 12.)"

Again it is said in Taylor v. Harmison, 179 Ill. 137 at pages 140 and 141 of the opinion: "If the intended gifts did not take effect as executed and completed gifts, but were to be completed by delivery after his death, it would be an attempted testamentary disposition of the notes. In order to complete the gifts it was necessary that there should be a delivery by which Whitnah parted with all control over the notes, reserving no right to reclaim or repossess himself of them. Such a delivery must be absolute, and the donor must part with all his present and future interest and control over the property."

In the light of these principles applicable to gifts inter vivos, it is necessary to ascertain from the facts shown by the record whether the certificate in question was delivered to the cashier of the bank as agent or trustee for his wife, in which event the gift would be a completed gift, or as agent for the deceased, or an attempt by him to make a testamentary disposition of the security, in which two latter events, no completed gift was ever made.

138

■ It is manifest from the evidence that Waggoner intended that at some time his sister should become the owner of the forty shares of stock represented by certificate no. 177, but intention of making a gift does not make a gift. Whether a good gift was made, depends upon not only what was actually said and done but all the facts and circumstances in connection therewith. We see no reason why the rule of practical construction, sometimes known as contemporaneous construction as applied to ambiguous constitutional or statutory provisions or of deeds or contracts is not applicable in determining the validity of gifts inter vivos, where the acts done in effectuating the alleged gift are subject to doubt. The rule as illustrated by Northern Illinois Coal Corp. v. Cryder, 361 Ill. 274, where it is said at page 284: "Another generally recognized principle in the interpretation of contracts is, that if the contract be regarded as ambiguous or uncertain, the practical construction of the contract, as shown by the acts of the parties thereto, is persuasive of the true construction to be accorded the contract."

The conversation the decedent had with his sister indicates that he was then considering giving to her some stock in the Shelby County State Bank at a future time. His conversation and actions at the bank on March 1, 1944 when he presented the certificate to the cashier and transfer agent of the bank, there endorsed the certificate in blank and signed a separate instrument authorizing the cashier to transfer the certificate of stock on the books of the bank to his sister, indicates that he intended her to have the stock at some time. His conversation with his fellow director of the bank in 1946 wherein he said that he had delivered a certificate for forty shares of stock to Aichele for his sister, Clara, adds nothing to what already had transpired. In other words the question as to when the gift was to become effective was left uncertain in every instance and creates a doubt as to when the full title and right to posses-

sion was to vest in the sister. Under these circumstances the conduct of the parties, that is the decedent and Aichele, the cashier, from the time the certificate was turned over to him, the latter, on March 1, 1944 down to the time of the demise of the decedent in January 1953, then becomes highly important as indicating when the gift was to vest in the alleged donee and she should have the full right to it and all of the incidents thereof.

The matter of the transfer of the stock was never discussed by the decedent and Aichele after March 1, 1944. The decedent continued to receive the dividends and vote the stock at stockholders' meetings for almost nine years. Aichele placed the certificate, endorsed in blank, and the written authority to transfer it to his wife, in his safety deposit box and there it remained continuously from that time on until the cause was tried in the county court. If it was the intention of the decedent to vest title as a completed gift in his sister, it is strange indeed that he would over that period of time collect the dividends, vote the stock, and not mention the subject to her or his brother-in-law. The conduct of the parties was such as to warrant the conclusion that they both understood title and right of possession of the stock should not vest in Clara Aichele until Waggoner's demise, and in the meantime the stock should stand on the books of the bank in his name with the right to receive the dividends, and vote the shares at stockholders' meetings.

The deceased clearly intended his sister to eventually have the stock represented by the certificate, but the means adopted to accomplish that end was an attempted testamentary disposition of property, contrary to law. (Taylor v. Harmison, 179 Ill. 137; Trubey v. Pease, 240 Ill. 513.)

The appellees contend a valid gift can be made of securities even though the donor reserves the interest

140

or income for his lifetime, and in support thereof call our attention to the case of Smith v. Baxter, 239 Ill. App. 453 and Northern Trust Co. v. Swartz, 309 Ill. 586. In such authorities the donor in making the gifts, by express agreement with the donee reserved the income —a recognition that the gift was a completed one, and without such specific reservation the interest or income would belong to the donee. We do not regard those cases as being either persuasive or controlling under the facts and circumstances existing in this case, where the certificate was delivered to a third person and no agreement was made as to future dividends or the right to vote the stock. The circumstances strongly indicate the deceased considered himself the owner of the shares during his lifetime, at least to the extent that he was entitled to the dividends and all voting rights.

█ Although, as between the parties, the transfer of the stock on the corporation books is not essential to a valid gift inter vivos (In re Estate of Antkowski, 286 Ill. App. 184, 195, 196), it is necessary that such gift be established by clear and convincing evidence (Rothwell v. Taylor, 303 Ill. 226; Bolton v. Bolton, 306 Ill. 473), and in the case of constructive delivery, the words and acts relied on as constituting the third party as agent or trustee of the donor must be established by "clear and convincing evidence." (In re Estate of Meyer, 317 Ill. App. 96, 104.)

█ The proofs fail to show by clear, convincing and satisfactory evidence that a gift was made in donor's lifetime or that a good constructive delivery was made to Aichele as agent or trustee for his wife, whereby the title to the stock and all the incidents thereto passed to the sister of the deceased during the latter's lifetime.

The judgment of the circuit court of Shelby county is reversed and the cause remanded to that court with directions to enter judgment finding that certificate

[black redaction bar]

no. 177 representing forty shares of stock of the Shelby County State Bank is the property of the estate of the decedent.

Judgment reversed, and cause remanded with instructions.