In the Matter of the Estate of Lewis B. McVicker, Deceased.
Ida Cohen, Petitioner-Appellee, v. Harris Trust and Savings Bank as Executor of the Estate of Lewis B. McVicker, Deceased, Respondent-Appellant.

Gen. No. 48,791.

First District, Third Division.

February 13, 1963.

E. Douglas Schwantes and Clarence Kammermann, of Chicago, for appellant.

Williston, McGibbon & Stastny, of Chicago (Joseph C. Stastny, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Ida Cohen filed a petition in the Probate Court against Harris Trust and Savings Bank, executor of the estate of Lewis B. McVicker, to recover 100 shares of stock which she claimed she had received from the decedent as a gift. The court ordered the respondent to deliver the stock to her. The respondent appeals

from the order on the ground that the petitioner's proof was insufficient to establish an inter vivos gift.

McVicker, a manufacturer's representative, owned and operated his own business and for many years Miss Cohen was his only employee. She served him as secretary, assistant and office manager. In his will, which set up testamentary trusts for his family and his alma mater, he bequeathed her his business, his office effects and $5,000.

For some 30 to 35 years he invested in stocks through his broker, Charles W. Wenner. At the Probate Court hearing Wenner testified on behalf of the petitioner. He stated that early in 1960 McVicker purchased the stock in question and received the certificate for the stock around the end of March. Soon thereafter McVicker told him he wanted to give the stock to Miss Cohen. At different times, both over the telephone and in person, McVicker repeated that he wanted her to have the stock and said that he was giving it to her. Wenner told him he could either endorse the certificate or sign a blank power. McVicker said he would transfer it but Wenner received neither the certificate nor a power. McVicker entered a hospital in June 1960, went into a coma in the middle of July and died in August.

His lawyer, Donald L. Vetter, was also a witness for the petitioner. Attorney Vetter had drawn McVicker's will and had been named the cotrustee of the trusts created by the will. He withdrew as attorney for the estate when he learned he was to be subpoenaed as a witness. On July 1st Vetter visited McVicker at the hospital. McVicker said to him: "Don— I have something on my mind I want to talk to you about. Miss Cohen has a certificate for 100 shares of Northern Illinois Gas preferred . . . that I gave her, but I never endorsed it, and I want you to get it from her and bring it here to me so I can endorse it." Vetter telephoned Miss Cohen and they agreed

to meet at the hospital the afternoon of July 5th. On that date Vetter saw McVicker before Miss Cohen arrived, but McVicker was ill and tired so Vetter spoke to him only a few minutes. As Vetter left the room he met Miss Cohen in the hall. She gave him the certificate and said: "I don't want you to do anything for me that will overtax Mr. McVicker. Whatever happens to me don't press him with any business on my account." Vetter replied: "He is very tired. I am going home."

Vetter went out of town for a week and did not see McVicker again until July 13th. The primary purpose of this visit was to obtain McVicker's authority to enter his safe deposit box to get a bond he wished to give his granddaughter for a wedding gift. He signed the necessary papers with a mark in the presence of Vetter, Miss Cohen and a representative of the safe deposit company. The stock certificate was not mentioned and Vetter in his testimony explained why: "I had the stock certificate in my pocket, but by the time we had finished talking about the bond, Mr. McVicker was very tired, and I did not wish to continue the conversation."

Vetter returned to the hospital two days later. A nurse informed him that McVicker was very low so he left without seeing him. He said to the nurse: "I am just not going to bother him about business if he is in that condition." Later, upon learning that his condition had improved, Vetter again made arrangements to visit him. He asked Charles Wenner to go along to witness McVicker's signature on the stock certificate. Wenner agreed. However, they never saw McVicker because the next day he lapsed into a coma and died a month later.

■■ The respondent introduced in evidence one check signed by McVicker on July 1st, one on July 5th, one on July 11th, eight on July 12th and two on

July 13th. Because he signed these 13 checks and did not sign the stock certificate the respondent's inference is that he did not wish to sign the latter. We do not know the circumstances surrounding the signing of the checks; we do know about the certificate. We do not know what McVicker's physical condition was when the checks were signed; we do know he was ill and tired on the two occasions after July 1st when Vetter saw him. The testimony was that his "physical and mental strength came and went, at one time it would be considerably better than at another." It is not essential that a stock certificate or other negotiable instrument be endorsed before it can be the subject of a gift. Rothwell v. Taylor, 303 Ill 226, 135 NE 419; In re Estates of Antkowski, 286 Ill App 184, 3 NE2d 132. This being so, McVicker's failure to endorse the certificate, both before entering the hospital and after requesting that it be brought to him at the hospital, is but a factor to be weighed in determining whether a valid gift was made.

Another factor to be placed on the scale, and the second inference drawn by the respondent as showing that McVicker did not intend to make a gift, is the retention by him of a dividend on the stock which was paid on June 8, 1960. Retention of dividends by a donor is something that is to be considered in connection with the other circumstances of an alleged gift. Martin v. Martin, 170 Ill 18, 48 NE 694; Frey v. Wubbena, 32 Ill App2d 374, 177 NE2d 724. The evidence does not disclose when McVicker gave Miss Cohen the stock. He declared his intention to give it to her soon after he received the certificate near the end of March. On July 1st he told his attorney that he had given it to her. If the gift was made after June 8th, his retaining the dividend of that date would of course have no significance. If the gift was made before June 8th, keeping the dividend would be a circum-

stance of some probative value, unless there had been an understanding that the dividends would be kept by him. A donor's express reservation of dividends or interest from the principal of a gift does not impair its validity. In re Estate of Waggoner, 5 Ill App2d 130, 125 NE2d 154; The Delta & Pine Land Co. v. Benton, 171 Ill App 635; Stock v. Seegar, 99 Ill App 353.

██ ██ The importance to be attached to the retained dividend would therefore depend on when the purported gift was made and, if made before June 8th, whether there was a reservation of the right to retain dividends. Information on these two subjects could come only from Miss Cohen. She was present in court during the hearing but did not testify. The third inference drawn by the respondent in this case is grounded on the petitioner's failure to testify. It argues that she withheld facts which were within her knowledge and therefore an inference arises that her testimony would have been detrimental to her.

The rule relied upon is stated in Page v. Keeves, 362 Ill 64, 199 NE 131:

> "It is a rule of law that where facts material to the issues are within the knowledge of a party to the cause and opportunity is afforded such party for the disclosure of such facts but is not availed of, a presumption arises that such evidence, if given, would have been unfavorable to him."

However, if there is a plausible explanation for a party not testifying, or if a party is not a competent witness, no unfavorable inference is warranted. Such is the case here. The petitioner was not competent to testify under the Evidence Act. Ill Rev Stats (1961), c 51, § 2. The respondent contends that she should have offered herself as a witness. The petitioner was under no obligation to attempt what the law prohib-

its. In Secrist v. Raffleson, 326 Ill App 489, 62 NE2d 36, the court said:

> "The appellant argues that because the plaintiff did not offer herself as a witness in her own behalf, or make an offer to take the witness stand, this was obviously an attempt to conceal the true facts concerning the accident. Under the Evidence Act the plaintiff was an incompetent witness. We find no merit in the contention that her failure to offer herself as a witness has any bearing on the merits of the case."

The respondent says that if the petitioner had taken the witness stand it would not have objected. No intimation of this was made in the trial court. As a matter of fact, the respondent called her as its own witness but carefully avoided asking any question which might have opened the door for later testimony on substantive issues. Its questions were limited to her identity and to her being present in court throughout the trial; the purpose of this, ostensibly, was to lay the foundation for its present contention. The explanation proffered by the respondent for this restricted examination is that it did not want to be bound by her testimony or to vouch for her credibility, and the implication is made that if she testified it was prepared to impeach her. But no explanation is made as to why she was not called as a witness under section 60 of the Civil Practice Act which permits examination of an adverse party without being concluded by the testimony, unless it remains uncontradicted or unimpeached. Ill Rev Stats (1961), c 110, § 60; Bucyna v. Rizzo Bros. Movers, Inc., 31 Ill App2d 31, 175 NE2d 640. The respondent's positions are inconsistent. The implication that it would impeach the petitioner presupposes that her testimony would have been favorable to her claim; this contradicts the pres-

ent argument that her failure to testify justifies an inference that her testimony would have been unfavorable to her claim.

■■ The further point is made that the petitioner was competent to testify because section 2 of the Evidence Act does not apply to citation proceedings. It is true that in citation proceedings brought under section 183 of the Probate Act, wherein the representative of an estate brings the action against someone withholding assets claimed by the estate, the rules of evidence may be relaxed. Ill Rev Stats (1961), c 3, § 183. In such instances section 185 of the act provides that ". . . the court may examine the respondent . . . may determine all questions of title, claims of adverse title, and the right of property, and may enter such orders and judgment as the case requires." The cases interpreting section 185 hold that if the court determines that the testimony of a respondent is necessary for the full presentation of the facts, it may call him as a witness even though he otherwise would be incompetent under section 2 of the Evidence Act; that the respondent then becomes the court's witness and may be examined by either the court or the attorneys for the parties. In re Estate of Hackenbroch, 35 Ill App2d 155, 182 NE2d 375. The present proceeding, however, was brought under section 187a of the Probate Act and is by a claimant against an estate. The respondent says that what can be done under section 185 can be done under section 187a—but no authority is cited to support this view.

Although section 187a is included among the other sections of the Probate Act dealing with citation proceedings, it is not strictly such a proceeding. It was added to the Probate Act in 1949 (following a 1948 opinion of this court which held that the Probate Court did not have jurisdiction of all claims against an estate or its administrators; see In re Estate of George,

335 Ill App 509, 82 NE2d 365) and its purpose was to give the Probate Court jurisdiction it did not have before: the determination of ownership of property claimed by another but in the hands of an executor, administrator, guardian or conservator. 4 James, Illinois Probate Law and Practice, sec 187a, pp 345–347. Granting this jurisdiction to the Probate Court eliminated the need of instituting a separate suit to recover property so held.

A proceeding under section 187a is not governed by section 185. These sections are alike in respect to the power given the court to determine ownership of disputed property, but they are not alike in respect to the power given the court to call its own witness. The words "the court may examine the respondent," which appear in section 185, are not repeated in section 187a.

Even if the interpretation urged by the respondent were the correct one, it would not benefit thereby. The power conferred by section 185 is limited to examining the respondent; it does not extend to other parties. Thus, in In re Estate of Hackenbroch, supra, a citation proceeding under sections 183–185, the testimony of the respondent was heard but it was held that the testimony of the respondent's wife was properly rejected as she was an incompetent witness because her husband was directly interested in the outcome of the proceeding.

█ The petitioner was not competent to testify of her own accord and she cannot be penalized by an adverse inference being drawn from the fact that she did not testify.

█ It was the petitioner's burden to establish the gift by clear and convincing evidence. Bolton v. Bolton, 306 Ill 473, 138 NE 158; In re Estate of Vercillo, 27 Ill App2d 151, 169 NE2d 364; Storr v. Storr, 329 Ill App 537, 69 NE2d 916. The evidence in behalf

of the petitioner met this requirement. The testimony of her witnesses is convincing; the delivery of the stock with intent to pass title is clear. The witnesses were close to McVicker, not to Miss Cohen. Their credibility is unquestioned. Wenner's testimony showed that from the time McVicker bought the stock he intended to give it to Miss Cohen. Attorney Vetter's testimony showed that he had given it to her and that he asked that the certificate be brought to him for endorsement. The declaration by McVicker that he had given her the stock certificate was unequivocal. The petitioner also had the certificate in her possession. While mere possession is insufficient to prove a valid gift it is a circumstance which corroborates the gift.

█ Each inter vivos gift case turns upon its own facts and circumstances. Here the direct evidence of McVicker's intention and action completely overcomes whatever inferences might be drawn from his nonendorsement of the certificate or his retention of the dividend. The order of the Probate Court is affirmed.

Affirmed.

SCHWARTZ and McCORMICK, JJ., concur.