## C. E. Rinard, Administrator, Appellant, v. Susan Lasley, Appellee.

GIFTS—*how of certificates of deposit may be made.* The gift of a promissory note payable to the order of the donor or of a certificate of deposit or of any such chose in action, may be made and executed by mere delivery without endorsement.

Proceeding by citation. Appeal from the Circuit Court of Wayne county; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed September 12, 1908.

CREIGHTON & THOMAS and LASLEY & LASLEY, for appellant.

BONHAM & McLIN and A. M. ELLIOTT, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a proceeding by citation in the County Court of Wayne county, instituted by appellant as administrator, against appellee, to obtain possession of a certain certificate of deposit claimed by appellant to be property of his intestate's estate. Trial was had in the County Court, resulting in findings and judgment in favor of appellee. From this judgment appellant prosecuted an appeal to the Circuit Court where the case was tried *de novo,* again resulting in appellee's favor.

The petition sets up that the intestate was the holder of a certificate of deposit in the Fairfield National Bank for the sum of $512.50, bearing date April 8, 1905, due in one year with interest at the rate of three per cent; that appellee was a sister-in-law of intestate and was living with him at the time of his death; and that immediately after he died she took possession of the certificate of deposit and refuses to deliver it over to appellant.

To this petition appellee answered that she did not take possession of said certificate at the death of intestate; that he was not the owner of it at the time of his death; that she was the owner of it at that time; and that she derived title thereto by gift from him in his lifetime.

At the trial the certificate was produced by appellee. Appellant introduced it in evidence, and appellee admitted that up to the time of intestate's death, "it had not been presented to the bank for payment." The certificate bore no indorsement thereon.

To meet appellant's case, appellee produced as witnesses Charles Hilliard, a neighbor, and her daughter,

Ethel Lasley; and she asked to be allowed to testify in her own behalf, but upon appellant objecting, the court refused to allow her to do so. Under section 80, chapter 3, Hurd's Revised Statutes, 1905, the court might have permitted appellee to testify, but a failure to "examine her on oath" or to permit her to testify at her own request, was not error. That question is left by the statute to the discretion of the court.

From the evidence it appears that the intestate was a bachelor, somewhat advanced in years, and lived in the country on a farm. Appellee was the widow of one of his brothers, and she, with her two children, had made her home with him and kept house for him for a number of years. He had been in failing health for a time and the witness Hilliard, a neighbor living about a quarter of a mile away, usually called each day to see him. On the occasion of one of these calls, about a week before his death, he was sitting on the side of his bed dressed in his underclothes. He asked for his pants, took a pocket-book out of his pants' pocket, took the certificate of deposit out of the pocket-book and handed the certificate of deposit to appellee, "and told her to take it and keep it," and "told her that he wanted her to have it as her own." Appellee took it, had it put in her own pocket book, upstairs, and kept possession of it from that time until it was produced in court. There were present on this occasion, all in the room together, the two witnesses, Hilliard and Ethel Lasley, and the two parties to the transaction, the intestate and appellee.

There are some discrepancies in the testimony of the two witnesses as to where the intestate's pants were, and as to who handed them to him, if any one did, or whether he got them himself; and there are also some discrepancies in the various answers of the witnesses as to the particular words that the intestate used at the time he "reached" the certificate to appellee, one of the witnesses saying that in connection with that transaction he said: "I may never get well."

But upon the whole, it is clear to us that the intestate did actually deliver the certificate in question to appellee with the intention of making a gift of it to her, that he fully expressed that intention by the words he used, and that she so understood and so accepted it. There is no occasion here for discussing any distinctions that might be made between gifts *inter vivos* and gifts *causa mortis*. The facts in this case fully meet all the requirements of either.

Counsel for appellant contend that the gift must fail for want of indorsement on the certificate. They say: "The lack of indorsement of such instrument is not only *prima facie* evidence that the deceased was the owner of the instrument at the time of his death, but it is conclusive. Such an instrument cannot under our statute be the subject of gift and the gift be perfected unless the same is transferred by the donor to the donee by (both) indorsement and delivery." And they further say that the certificate of deposit in this case is in legal effect, and in fact, a promissory note. In this latter statement they are correct. As a general rule the courts of both England and the United States hold this class of obligations to be promissory notes; our own Supreme Court has so held. In Bank of Peru v. Farnsworth, 18 Ill. 563 (565), the court, in discussing a certificate of deposit, in substance and effect the same as the one in question here, says, "it is simply a promissory note." In Laughlin v. Marshall, 19 Ill. 390, the court holds that "a certificate of deposit, payable to the order of the depositor, is in effect, a promissory note." To the same effect are the cases of Hunt v. Divine, 37 Ill. 137, and Telford v. Patton, 144 Ill. 611.

Counsel cite section 4 chapter 98, Hurd's Revised Statutes, 1906. This statute is as follows: "Any such note, bond, bill, or other instrument in writing, made payable to any person named as payee therein, shall be assignable, by indorsement thereon, under the hand of such person, and of his assignees, in the same

manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee successively.'' It will be observed that neither the word title nor the word ownership appears in the statute. That statute has no application as between the transferrer and the transferee with respect to either title or ownership. The purpose of the statute was to bring this class of paper within the scope of the law merchant. The statute ''is a remedial and not a restraining statute.'' At common law promissory notes were not assignable, and when transferred were subject to existing equities in favor of the maker or payor. The principal purpose of the statute was ''to cut off the equities,'' and enable the transferee to avail of the ''innocent purchaser rule.'' of the law merchant, as in cases of bills of exchange. The owner of a promissory note, transferred without indorsement, might at common law, and may now hold it against all the processes known to the law and against all the world, except as to the equities of the makers or payors. It is true that in case of suit he must use the name of the payee—the first transferrer, but such transferrer has no interest in the note, and no power to deny the use of his name nor any control over the suit. This practice prevails only for the protection of the makers or payors and to meet the demands of ultra-scholastic reasoning with respect only to a mere matter of form.

As above noted, promissory notes were not assignable at common law so as to bring them under the operation of the rules of the law merchant. To remedy this condition, and as the preamble to the act says, ''to encourage trade and commerce, which will be much advanced, if such notes shall have the same effect as bills of exchange, and shall be negotiated in like manner,'' the English Parliament passed chapter 9 of the Statutes of 3 and 4 Anne. This statute was passed in the year 1704, and in as much as the date of the granting of the charter for the settlement of the colony

at Jamestown preceded that date, it never became a part of the common law of Virginia and was not.embraced in our statute adopting the common law. So the state of our law with respect to promissory notes and the law merchant was the same as it was in England before the passage of the statute of 3 and 4 Anne. Moved by the same condition and purpose that moved the English Parliament, our legislature at a very early day in the history of the state passed the statute above quoted, to take the place and serve the purpose, with us, that the statute of 3 and 4 Anne took and served in England.

We think the statute is of no value as support to counsel's position. The general rule now is, as well where such statute prevails as where it does not, that a gift of a ''promissory note payable to the order of the donor,'' and of a ''certificate of deposit,'' and of any such chose in action, may be made and executed by mere delivery without indorsement thereon. Thornton on Gifts and Advancements, pp. 238, 239, 306; Redfield on the Law of Wills, Vol. 3, pp. 335, 336; Rood on Wills, 28; American and English Encyclopedia of Law, 2nd Ed. Vol. 14, pp. 1022, 1023, 1059; Cyc., Vol. 20, pp. 1202, 1206, 1238. The cases that support these texts are too numerous to cite.

While the direct question does not appear to have been much under consideration by the courts of our state, we think both the Appellate Court and the Supreme Court have at least recognized the rule to be as above stated. Martin v. Martin, 68 Ill. App. 169; Martin v. Martin, 170 Ill. 18; Martin v. Martin, 174 Ill. 371. The cases relied upon by counsel for appellant turn upon questions other than that of indorsement, and are of little value here.

We find no error in this record. The judgment of the Circuit Court is affirmed.

*Affirmed.*