People of State of Illinois ex rel. Clara May Williams and Gerald N. Williams, Administrators with Will Annexed of Estate of Gerald M. Williams, Deceased, Appellants, v. Clareice Wismuth, Appellee.

Gen. No. 10,730.

Opinion filed March 26, 1954.
Rehearing denied May 4, 1954. Released for publication May 4, 1954.

PETERSEN & GOLDSMITH, and ALLEN, MATTHEWS, JORDAN & DEAN, all of Aurora, for appellants; JOSEPH T. SUHLER, DAVID D. DYER, JR., JOHN S. PETERSEN, and EVERETT JORDAN, all of Aurora, of counsel.

REID & OCHSENSCHLAGER, of Aurora, for appellee; FRANK R. REID, JR., and ROBERT B. HUPP, all of Aurora, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

This is a proceeding under the Administration Act brought by the administrators with the will annexed of Gerald M. Williams, deceased, to recover certain cashier's checks and stock certificates which were in the possession of Clareice Wismuth, the appellee, which were alleged by the administrators to be the assets of the Gerald M. Williams' estate. Clareice Wismuth, the respondent, filed an answer to this petition in which she admitted possession of the checks and stock, but contended they were a gift *inter vivos* to her by the deceased, Gerald M. Williams. A hearing in the probate court resulted in an order directing the property to be turned over to the administrators. The case was appealed to the circuit court of Kane county. The case was tried *de novo* and an order was entered finding that the respondent was the owner of the property. From that order the administrators have perfected an appeal to this court.

The petition enumerates checks and stock which they claim the respondent has in her possession and which should be turned over to them as assets of the Williams' estate. The respondent by her answer, admits

111

that she has these specific checks and stock in her possession, which she claims were given to her by Gerald M. Williams on October 11, 1950. The evidence shows that Gerald Williams was sick and his mother and two daughters and Clareice Wismuth were caring for him in his home. The respondent claims that on October 11th, that he gave her an envelope containing the securities in question and six deeds to real estate; that he got them out of the desk and put them in the envelope and enclosed them in a copy of a Saturday Evening Post, and said: "Now I am giving you these, they are yours, they mean money to you; I want you to take care of them." "I may not be getting the exact words, but that is the substance," then Williams further said: "Now you come here tomorrow and take them to the bank. If any one is here, you will have to come back the next day." That in substance, the witness said was the whole of the conversation at the time the checks and stocks were delivered to her.

Helen Simpson who lives at West Palm Beach, Florida, testified that she knew Gerald M. Williams for a number of years and had seen him every winter at lakes in Iowa and Minnesota and every winter in Florida for the past fifteen years; that the last time she saw him prior to his death, was in February 1950; that she was present when Gerald Williams and her husband had a conversation with reference to Clareice Wismuth; that Gerald said that we should prepare for a wedding when they came down next year, because I have arranged my affairs so that I can give Clareice security without taking from my children. He said that he had several thousand dollars worth of cashier's checks and some securities for Clareice; "that he had already taken care of her so it wouldn't hurt his children." This testimony was objected to by the appellants. It is now assigned as error. In view of the deci-

sion we have reached in this case, it is not necessary for us to pass on the admissibility of this evidence.

█ Clara May Williams, the mother of Gerald M. Williams, and one of the administrators of the estate testified that her son died on October 17, 1950; that on the 20th of October she came into the possession of the keys to her son's filing cabinet and on the day of his funeral she opened the cabinet; that on the following Monday or Tuesday she opened the filing cabinet, and she saw five cashier's checks for $1,000 each drawn on the Old Second National Bank payable to Gerald Williams, and in the bottom drawer of the filing cabinet there were stocks, four Peabody shares, one hundred shares each, and seven of the Textron, one hundred shares each in the name of Gerald M. Williams and that they were not endorsed; that five or six days later she went to this cabinet and found the cashier's checks and the stock certificates missing. On cross-examination it is shown that she made some statements in the probate court at the time of the hearing on this claim different from what she now stated, and it is argued that because she had stated that she had not talked to anyone about this matter and later admitted that she had talked to her attorney, her testimony is materially weakened. Such questions are frequently asked witnesses, especially in a jury case, but it has been held proper for the attorney to refresh the witness' memory in regard to it. On the material facts of her testimony it seems to be the same at both hearings.

Gerald N. Williams, son of Gerald M. Williams, one of the administrators with the will annexed of his father, testified that he found stock of the Peabody Coal Company at the bank that was worth $7,000, $600 cash and $1,300 in the Aurora National Bank; that the Peabody Coal Company Stock was put up as security for a $3,000 loan from the bank to his father. This was the whole of his father's estate, that he could find.

113

There was introduced in evidence a photostatic copy of the last will and testament of Gerald M. Williams and it is as follows: "October 11, 1950 The last will and testament of Gerald Williams. I hereby bequeath to my beloved fiancee Clareice Wismuth $1,000.00 One thousand dollars cash—the balance of my cash and stocks to my mother Mrs. Mae Williams (which will a little more than repay the $14,000.00 she loaned to me when she sold the house at 221 south Lake St. I also wish my mother to make other arrangements for the trust and for Clareice as per our plan.

Signed & sealed

Gerald M. Williams

Witness

Clareice Wismuth

Mrs. LaPriel Williams Schlitz."

 At the request of the respondent's attorney, Clareice Wismuth was called by the court as a witness, and over the objection of the appellants, she was permitted to testify as to the conversation that she had with Gerald M. Williams at the time she claims the stocks and certificates were turned over to her. Part of section 337 of chapter 3 of the Illinois Revised Statute [Jones Ill. Stats. Ann. 110.434], which is part of the Administration Act (under citation to recover property and discover information), provides as follows: "At the hearing the court may examine the respondent on oath whether or not the petitioner has proved the matters alleged in the petition." We have the same question presented to us in the case of *Storr v. Storr,* 329 Ill. App. 537. We there followed and quoted from the case of *Keshner v. Keshner,* 376 Ill. 354. The facts are not exactly the same as the instant case, because in the *Keshner* case the respondent was called by the executor to testify, but the court in passing upon the admissibility of this evidence uses

114

this language: "Witnesses called by an executor in a proceeding for discovery and recovery of assets and who, it is claimed, have or had the property in question in their possession, are witnesses of the court and their testimony is not to be evaluated by the ordinary rules applying to adverse witnesses, as the proceeding being for the benefit of creditors, they cannot be bound by the testimony of such witnesses nor be held to have vouched for its truthfulness, but such witnesses being actually adverse and reluctant, their examination and testimony, for all practical purposes, must be so considered and weighed." From this language it seems that regardless of who called the respondent to testify that it is the court's witness, and the witnesses' testimony should be considered with the other evidence in the case. There is another difference that has not been called to our attention by either the appellants or the appellee. In the *Keshner* case it does not appear in the case whether the respondent filed an answer and admitted the possession of the property. Neither does it appear in *Storr v. Storr, supra.*

One appellate case has been cited by the appellants where the court did hear evidence in regard to the possession of the funds claimed by the administrators, but refused to let the claimant testify as to what the donor had said in regard to it. We are of the opinion that the trial court did not err in calling Clareice Wismuth to testify in this case.

It is undisputed that Gerald M. Williams made his will on the same day and shortly after the appellee claims he gave her the securities and deeds in question, and that she signed as a witness to the will. In his will the testator states why he is giving the $14,000 worth of securities to his mother, and that is to repay her for a debt that he owes her. It hardly seems reasonable for a man that was in his right mind to will away

115

$14,000 worth of securities that he had an hour or so before given away, especially so when it is stated to be for the express purpose of paying a debt he owed to his mother.

LaPriel Schultz, a daughter of Gerald Williams, testified and part of her evidence as abstracted shows as follows: "At the meeting following the funeral, Clareice, Grandmother, Jerry, Bea and Jane and myself were present. Mr. Petersen read the will. Clareice said that she didn't think dad thought that much of her and she was surprised. Yes, I heard Mr. Petersen mention something about checks. Well, he knew Daddy had several checks, but I don't exactly recall what else he said about them. He did inquire about some stocks. Clareice was in the room at that time. I remember a meeting at home about a month or 6 weeks after father's death. Grandmother, Jerry, Bea, Clareice and myself. There was a conversation about the assets of the estate. He said that he had only found 8 or 9 thousand; he said he hadn't found the $15,000. Clareice said if he willed it, it must be some place. She did not say anything about any property being given to her."

Another daughter of Gerald Williams, Shirley Neil, testified that she was present at the same meeting as her sister, LaPriel Schultz, and part of her evidence as abstracted is as follows: "The room was approximately 9 x 12; Mr. Petersen made inquiries about cashier's checks; he said he knew Daddy had five in $1000 cashier's checks and wanted to know if anyone present knew anything about them. Nobody knew anything about the cashier's checks, but Mr. Petersen said he had one cashier's check for $500 for expenses, which Mr. Petersen had. Clareice then said she had one cashier's check for $500 for expenses. She did not say anything about any other cashier's checks or any stocks. She never at any time told me she had any cashier's checks or stock certificates that she had received from my father.

116

"I recall the meeting at the home about a month or 6 weeks after father's death, Jane, LaPriel, my grandmother, Clareice and I were present. There was a discussion about the assets and the Will. My brother said that he had been able to find $9000 in assets, that was all, that he couldn't carry out the Will because there was only $9000 available.

"Clareice was present. She said she knew there must be more money if Daddy stated that in his last will, which I said too. She did not say anything about having cashier's checks or stocks in her possession."

██ Clareice Wismuth denies that she heard part of these statements, but she admits being present at the meeting and it is inconceivable that she would not hear everything that was said, as certainly she was an interested party of what was going on at that time. It seems strange that if she had the legal possession of these securities that she would not have made it known at that time. It seems to us that her silence mitigates strongly against her position that the checks and stocks had been delivered to her as a gift.

██ It is held in the case of *Fierke v. Elgin City Banking Co.*, 366 Ill. 66 that evidence of what a deceased person may have said in making a gift should be carefully scrutinized and the circumstances under which the alleged gift was made must be considered with the other evidence in the case, as direct disproof of such declarations and admissions of the donor and his conduct is rarely possible. As stated in *Keshner v. Keshner, supra,* courts lend a very unwilling ear to statements by interested persons about what dead men have said; that such evidence is subject to great abuse and that it will be carefully scrutinized as well as considered with all the other evidence in the case.

██ ██ The burden of proving a gift *inter vivos* of the securities in question was upon the appellee, and it

is our conclusion that the evidence in this case, which is intended to prove a gift, falls very short of that clear and convincing proof, which the law requires, and we hold that it is insufficient for that purpose.

The judgment of the trial court is hereby reversed and the cause remanded with directions for the court to enter an order finding that the securities in question are a part of the estate of Gerald M. Williams, deceased.

*Reversed and remanded.*

MR. JUSTICE ANDERSON took no part in the consideration or decision of this case.