In the Matter of the Estate of Christopher J. Hill, Deceased.

Harris Trust and Savings Bank, Executor of the Estate of Christopher J. Hill, Deceased, Appellee, v. Virginia R. Hill, Appellant.

Gen. No. 48,277.

First District, Second Division.

April 4, 1961.

■ ■ ■ ■ ■

Rothschild, Hart, Stevens & Barry, of Chicago (L. Edward Hart and Arthur L. Dunne, of counsel) for appellant.

McDermott, Will & Emery, of Chicago (David P. Wood, Jr., Hamilton Smith and John G. Satter, Jr., of counsel) for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Harris Trust and Savings Bank, executor of the estate of Christopher J. Hill, deceased, filed a petition in the Probate Court for a citation against the decedent's widow, alleging that she had possession of and asserted ownership to 2000 shares of the common stock of Lake Front Realty Corporation. The petition requested a hearing and determination by the court that the executor was the sole legal and equitable owner of the certificate and shares, and that at the conclu-

sion of the hearing the court require respondent to surrender the certificate to the executor. Respondent appeared in court in response to the citation and produced the certificate. The executor then offered an affidavit of the assistant secretary of the corporation showing that the certificate was issued in the name of Christopher J. Hill, the decedent, and had so remained on the books of the corporation. The executor offered no further evidence and rested its case. Respondent then moved for dismissal of the citation proceeding on the ground that the executor had not sustained its burden of proof. The motion was denied. The respondent widow was then offered as a witness to be examined by the court in response to the citation. Counsel for the executor objected to her testimony on the basis of her incompetency as a witness under section 2 of the Evidence Act (Ill. Rev. Stat. 1959, ch. 51). Respondent's counsel then made an offer of proof, to which the executor's attorney objected. The objection was sustained, and an order was entered finding that respondent had no legal or equitable interest in the certificate or the shares represented thereby, and she was ordered to forthwith surrender the certificate to the executor.

Respondent, appealing, claims the certificate and shares as a gift inter vivos, and contends that the court (1) should have granted her motion for dismissal at the close of petitioner's case on the ground that the executor failed to make a prima facie case, or, in any event, (2) should have permitted her to testify.

For an understanding of the circumstances under which she claims to have received the certificate and shares, we quote the salient portions of the offer of proof:

"It's our position [i.e., the position of respondent's counsel] that we wish to offer the respondent who

245

is responding here to the citation, bringing in the stock certificate, for examination which I will either carry on, Mr. Kelly [counsel representing the executor] can carry on, or the Court may carry on as you please to the transaction by which she gained possession of this stock certificate, and I will make this if the Court wishes me to in the nature of an offer.

"There is an offer of proof by Mrs. Hill, the widow of the deceased C. J. Hill, that on July 14, 1958, I believe it is, Mr. and Mrs. Hill went to the safety deposit box in the Lake Shore Bank where they had a joint box; . . . .

"That in going over the matters contained in their joint box, he took out all of the C. J. Hill Company stock and put that in his briefcase; that he took out the Lowell Lumber Company stock that was in there and the Lake Shore [Lake Front] Realty stock that was in there and gave both of them to her saying at the time he made the gift—or he made delivery to her, 'These are yours.'

"She subsequently has had possession of the Lake Shore [Lake Front] Realty stock until this time; that subsequent to that time and before his death—he incidentally died the end of August that same year—he stated to her that he had decided to leave the Lowell Lumber Company stock to some relatives. Now, I say 'some relatives.' Those weren't his words. He called them by name to her, but I don't offhand remember them at the moment. And he asked her for that particular certificate of stock of Lowell Lumber Company which she gave him; that during this entire period of time from July 14 to the time of his death he was extremely ill and out of the apartment very seldom. She has had the stock ever since that time and she produces it in Court.

". . . . I offer to further prove that the certificate of stock or certificates of stock of Lowell Lumber

246

Company were thereafter specifically given [bequeathed by will subsequently made] by the decedent, C. J. Hill, to the parties whom he had discussed in the conversation which I have related in the earlier part of the offer, to the relatives that were in that conversation named, and further prove by that will which is the will admitted in Probate in this case or in this estate that no disposition was made by the will of the Lake Shore [Lake Front] Realty Company stock."

■ ■ The executor concedes that it had the burden of proving ownership of the stock certificate, and contends that it met this burden and established a prima facie case by showing that the stock was registered on its face and on the books of the corporation in the name of decedent, and was not endorsed. Its counsel rely on section 21 of the Uniform Stock Transfer Act (Ill. Rev. Stat. 1959, ch. 32, § 436) in support of their position. Possession of the stock certificate was clearly in the widow. The fact that it remained on the books of the corporation in the name of decedent, the claimed donor, does not defeat the gift nor affect title of the donee. In re Estates of Antkowski, 286 Ill. App. 184, 3 N.E.2d 132 (1936), a case of first impression in this state, was factually and procedurally similar to the case at bar. There (p. 195) the court followed the reasoning of In re Connell's Estate, 282 Pa. 555, 128 Atl. 503, 38 A.L.R. 1362 (1925), that the object of the Uniform Stock Transfer Act was merely to regulate the mode of transfer upon the books of the corporation and to furnish a rule for deciding between claimants contesting over the ownership of the stock, and that the provision was inserted for the protection of the corporation in the payment of dividends or otherwise but was not intended to control the rights of the parties in matters as between themselves. As early as 1925 Professor

Mechem, discussing the Uniform Stock Transfer Act in 20 ILL. L. REV. 9 (1925–1926), expressed the opinion (p. 29) that sections 1 and 9, construed together, would appear to provide that "the delivery of a certificate, unendorsed, would be effectual to pass an equitable title, enforcible by the donee," and said "that such a conclusion is correct has been held or intimated in at least two cases," citing Herbert v. Simson, 220 Mass. 480, 108 N.E. 65 (1915), and Reinhard v. Sidney B. Roby Co., 110 Misc. Rep. 152, 179 N.Y.S. 781 (Sup. Ct. 1920), both of which involved the validity of a gift of stock certificates. In 12A Fletcher Cyclopedia Corporations § 5684 (1957 rev. vol.), the same conclusion is reached; a footnote cites four supporting federal cases, and decisions in some fifteen states, including Illinois, California, Massachusetts, New York, Ohio, Pennsylvania, and Rhode Island, to the effect that a certificate of stock may, without formal transfer, be given by delivery. The Antkowski case enunciates the rule in Illinois and is frequently cited; see In re Estate of Waggoner, 5 Ill. App. 2d 130, 141, 125 N.E.2d 154 (1955), Home for Destitute Crippled Children v. Boomer, 308 Ill. App. 170, 188, 31 N.E.2d 812 (1941), Annot., 152 A.L.R. 427, 436 (1944).

██ In the situation here involved, the introduction of the unendorsed certificate and the showing that it remained in the name of decedent on the books of the corporation, did not, of themselves, constitute sufficient evidence to show ownership in the estate. As against this scant proof is another fact of evidentiary value—possession of the certificate by the widow. The law never presumes a gift (Bolton v. Bolton, 306 Ill. 473, 486, 138 N.E. 158 (1923), Rothwell v. Taylor, 303 Ill. 226, 230–232, 135 N.E. 419 (1922)), but unless respondent be allowed to testify, she is deprived of the opportunity to establish that "clear and convincing proof" required by the law.

The issue on which this case turned in the trial court was whether respondent should have been permitted to testify to the circumstances under which the stock, as she claimed, was given to her by decedent. In refusing to examine her or to permit her to testify, the court evidently overlooked section 185 of the Probate Act (Ill. Rev. Stat. 1959, ch. 3, § 337) and excluded her proffered testimony, solely under the provisions of section 2 of the Evidence Act. This clearly appears from the colloquy between court and counsel immediately following the offer of proof. The court expressed doubt as to whether respondent "can testify as to the conversations," and then following a conference in chambers, wherein respondent's counsel presented citations of authority, the court concluded by saying, "I think the essence of it is whether this lady is competent to testify," and "I am just asking you about whether she can testify." Apparently no effect was given to the discovery provisions of section 185 of the Probate Act which clearly impart to the court the right to examine a respondent in a citation proceeding and are calculated to determine claims of adverse title and the right of property.

The applicable portion of the Probate Act reads as follows: "At the hearing the court may examine the respondent on oath whether or not the petitioner has proved the matters alleged in the petition, may hear the evidence offered by any party, may determine all questions of title, claims of adverse title, and the right of property, and may enter such orders and judgment as the case requires." In such a situation the court must inquire into facts and circumstances affecting the ownership of assets. The executor, for the first time on appeal, stresses the point that the word "may," as employed in the Probate Act, does not impose a duty upon the court to examine the respondent, but merely gives the court discretion to do so, and argues that it was not an abuse of discretion to ex-

clude the proffered evidence. Two early decisions are cited by the executor to support this view: Mahoney v. People ex rel. Patteson, 98 Ill. App. 241 (1901), and Rinard v. Lasley, 143 Ill. App. 450 (1908).

The Mahoney case was a citation proceeding brought by petitioner in the county court in which decedent's estate was being administered. The petition alleged that Mahoney had in his possession, and refused to surrender to the administrator, two notes for $500.00 each, payable to the deceased and not endorsed, as well as other personal property. Respondent was called, sworn, and examined upon his own behalf and over the objection of the petitioner. Subsequently his testimony was stricken, and the case decided against him. On appeal it was urged that the testimony should be considered by the reviewing court, but this contention was rejected on the ground (p. 244) that there was "no assignment of error upon which we can review the action of the trial court in striking appellant's testimony from the record. But if the question was properly before us we are of the opinion that it would be unavailing to appellant. The statute leaves it discretionary with the court to examine or not to examine the appellant. The statute says the court may, not shall, examine the appellant. The statute is not mandatory. Where the court does not exercise discretion to examine the party he is not a competent witness in his own behalf." In the later Rinard case the court (p. 452) made the same interpretation. However, recent cases have taken an entirely different view of the procedure contemplated by the Probate Act, and none of them cite or discuss the foregoing decisions. The primary purpose of section 185 of the Probate Act has been interpreted as a proceeding to discover assets, and once this has been accomplished, to resolve their ownership.

The specific objection raised by the executor here was considered in Storr v. Storr, 329 Ill. App. 537, 69

N.E.2d 916 (1946). There the executor caused a citation to issue against Hugo Storr, son of the deceased, seeking to recover certain money. Respondent was permitted to testify, over objection of attorneys for the executor, as to conversations had with the deceased, and as to other matters pertaining to the facts and circumstances surrounding the alleged gift inter vivos. The court found for respondent and dismissed the petition for a citation, holding that the executor had failed to prove by a preponderance of evidence that the money received from the sale of realty and in respondent's possession belonged to the estate of Carl Storr. On appeal the Appellate Court first considered the nature and purpose of the citation sections of the Probate Court Act; Mr. Justice Bristow, speaking for the court, said (p. 542): "The legislature has provided therein a summary remedy for the recovery of property and the discovery of information. Its primary purpose is to discover assets of estates, and the court is authorized therein to make such orders as the case may require. Horner, Probate Practice, ch. 42, § 1075, Martin v. Martin, 174 Ill. 371; Keshner v. Keshner, 376 Ill. 354. The proceeding is purely statutory, and is neither at law nor in equity. It bears the equitable aspects of a bill of discovery, while at the same time providing for an optional jury as at law, on demand of the parties where questions arise concerning claims of adverse title or interest, as in the instant case. With reference to the nature of this proceeding, the Supreme Court of Illinois stated in Keshner v. Keshner, 376 Ill. 354, 359: 'We have thus an anomalous proceeding and the peculiar nature of this kind of suit has a distinct bearing on the decision of this case.' "

In the Keshner case (1941) the executor caused a citation to issue against the wife and the two children of the deceased, seeking to recover certain money held by them. Basing its decision upon all the evi-

dence, including testimony by the respondent widow and her daughter, the trial court held in favor of the executor. The respondents urged that the trial court erroneously admitted certain letters written by decedent and asserting his ownership in the property in question. The Supreme Court considered the objection in the light of the citation sections of the Probate Act, and after quoting at length from the Storr decision, said (pp. 359–360): "The court is given power to determine all questions of adverse title or of right of property, and it may enforce its judgments by execution or by proceedings in contempt. The proceeding may be merely for the purpose of obtaining information with no adversary aspects, or it may develop into an out and out suit for the recovery of money. We have thus an anomalous proceeding and the peculiar nature of this kind of a suit has a distinct bearing on the decision of this case." In considering the testimony of the widow and daughter, respondents to the citation, the court did not question their right to testify, saying (p. 362): "It cannot be said in this case that the testimony of the widow and daughter must be evaluated by the ordinary rules applying to adverse witnesses. They were not the witnesses of the creditor or executor but of the court, and no matter by whom they were examined the creditor could not be bound by their testimony nor be held to have vouched for its truthfulness. To apply such a rule to this proceeding would be to destroy its usefulness in the administration of estates and completely thwart the very purpose for which the statute was enacted. (Wade v. Pritchard, 69 Ill. 279.) It frequently happens that the only persons who know the facts of a transaction with a deceased person are the very persons whose object and interest is to conceal those facts. Under such circumstances, so far as the other persons interested are concerned, they are actually adverse and

252

reluctant witnesses and their examination and testimony, for all practical purposes, *must* be so considered and weighed." (Italics ours.)

In People ex rel. Williams v. Wismuth, 2 Ill. App. 2d 109, 118 N.E.2d 881 (1954), as in the proceeding before us, the respondent was offered as a witness of the court, but there she was allowed to testify, despite the objection of the administrators. In that case the court cited and relied on the Keshner case, and said (pp. 114–115): "The facts [in the Keshner case] are not exactly the same as the instant case, because in the Keshner case the respondent was called by the executor to testify, but the court in passing upon the admissibility of this evidence uses this language: 'Witnesses called by an executor in a proceeding for discovery and recovery of assets and who, it is claimed, have or had the property in question in their possession, are witnesses of the court and their testimony is not to be evaluated by the ordinary rules applying to adverse witnesses, as the proceeding being for the benefit of creditors, they cannot be bound by the testimony of such witnesses nor be held to have vouched for its truthfulness, but such witnesses being actually adverse and reluctant, their examination and testimony, for all practical purposes, *must* be so considered and weighed.' From this language it seems that regardless of who called the respondent to testify that it is the court's witness, and the witnesses' testimony should be considered with the other evidence in the case." (Italics ours.)

In Wagner v. Wagner, 17 Ill. App. 2d 307, 149 N.E. 2d 770 (1958), which necessitated a determination as to the existence of a partnership between decedent and his defendant son, it was held that if a prima facie case of general partnership could be established by the administrator, then the defendant would be a competent witness under the citation sections of the

253

Probate Act, and the court pertinently observed (p. 313): ". . . we point out that defendant's competency as a witness is not inflexibly controlled by Sec. 2 of the Evidence Act . . . . Sec. 185 of the Probate Act . . . provides that the court may examine the respondent under oath. Under such circumstances the respondent becomes the court's witness whether examined by the court or by the attorneys for the parties. [Citing the Storr and Keshner decisions.] Whether the respondent's testimony is necessary to a full and fair presentation of the facts in this case lies within the careful exercise of discretion by the trial court. In making such observation we are not deviating from our holding in Johnson v. Mueller, 346 Ill. App. 199, 104 N.E.2d 651, that a respondent in such proceeding is incompetent when called as a witness in his own behalf. Therefore, if, in the court's discretion, the accounting required by the pertinent provisions of the Probate Act and the Partnership Act cannot be fairly accomplished without testimony from defendant, he should be examined by the court pursuant to Sec. 185 of the Probate Act . . . ." Obviously, the statement that the admission of respondent's testimony is discretionary with the court, refers only to whether such testimony "is necessary to a full and fair presentation of the facts"; and it would seem to follow that where no evidence whatever is admitted on behalf of respondent, the discretion is certainly not carefully exercised.

In the instant proceeding, when the offer of proof was made, the question presented to the court was not the competency of the witness but the weight to be given the offered testimony. Respondent obviously had an interest; but if she were allowed to testify, her appearance and demeanor, under a careful examination by the court and counsel, could have been observed to afford the court some basis for determin-

254

ing whether or not she had received the certificate and stock as a gift.

■ We do not hold with the contention of respondent that the court should have dismissed the petition. The error arises from the court's decision to exclude the evidence offered, under the mistaken belief that defendant's competency as a witness was inflexibly controlled by section 2 of the Evidence Act. The sole objective of the citation proceeding was to determine the ownership of the stock, and this could be determined only after a full hearing. As the proceeding developed, there was no hearing and no basis on which the court could make a fair and rational decision. The issue whether there was a gift was never established.

The order of the Probate Court is reversed, and the cause remanded for a new trial not inconsistent with the views herein expressed.

Order reversed, and cause remanded for a new trial with directions.

BRYANT, J. concurs.

BURKE, P. J. dissenting:

The executor made out a prima facie case of ownership of the stock certificate by proving that it was registered on its face and on the books of the corporation in the name of the decedent and was not endorsed. Sec. 21 of the Uniform Stock Transfer Act, (Sec. 436, Ill. Rev. Stat. 1959). The burden then rested on the respondent to go forward with the evidence. Wagner v. Wagner, 17 Ill. App. 2d 307, 310, 149 N.E.2d 770. She seeks to meet her burden by proving a gift of the certificate to her by decedent. The burden was on her to prove the gift. In re Estates of Antkowski, 286 Ill. App. 184, 3 N.E.2d 132; People ex rel. Wil-

liams v. Wismuth, 2 Ill. App. 2d 109, 117, 118 N.E.2d 881; Storr v. Storr, 329 Ill. App. 537, 543, 69 N.E.2d 916; In re Estate of Wright, 304 Ill. App. 87, 94, 25 N.E.2d 909; In re Estate of Jarmuth, 329 Ill. App. 619, 630, 70 N.E.2d 336. The executor did not have the burden of proving that there was no gift. The respondent cites the case of In re Estate of Maxwell M. Jones, deceased, 274 Ill. App. 616, to avoid her burden of proving the gift. There the stock certificates had been endorsed in blank and were in the possession of the sister of decedent.

The only evidence offered by respondent to sustain her burden of proving the alleged gift was her own testimony of what the deceased had said to her. Such total uncorroborated testimony by one who stands to profit from it is of questionable credibility and is almost wholly impossible to refute. For that reason it is generally incompetent under Sec. 2 of the Evidence Act. For practical reasons such testimony may be admitted in the Probate Court in limited circumstances under the provisions of Sec. 185 of the Probate Act. (Sec. 337, Ch. 3, Ill. Rev. Stats. 1959).

This section, however, does not impose a duty upon the court to examine the respondent. It gives the court discretion to do so. See Mahoney v. The People, 98 Ill. App. 241; Wagner v. Wagner, 17 Ill. App. 2d 307, 313, 149 N.E.2d 770; Storr v. Storr, 329 Ill. App. 537, 542, 69 N.E.2d 916. The court did not abuse its discretion by rejecting the proffered testimony of respondent as to statement made to her by decedent. This was the only testimony offered to prove the alleged gift. There were no other confirming witnesses nor any corroborative letters or documents. Respondent would have. been an interested witness. Furthermore, her offer of proof asserts that decedent handed to her the stock certificates of the Lowell Lumber Company and the Lake Front Realty Company and told her that the stock was hers, but that subsequent-

ly he told her he had decided to leave the Lowell Lumber Company stock to some relatives. This proffered evidence indicates that decedent intended to retain control over the stock during his lifetime, and that therefore it should be disposed of pursuant to his will. The majority opinion, in effect, ignores the discretion of the trial judge to call or not to call the respondent and assumes to exercise that discretion for him.