The STATE ex rel. STACY

v.

BATAVIA LOCAL SCHOOL DISTRICT BOARD OF EDUCATION et al.

[Cite as *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 157 Ohio App.3d 34, 2004-Ohio-2067.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2000–10–077.

Decided April 26, 2004.

See also 89 Ohio St.3d 191, 729 N.E.2d 743.

Buckley King, L.P.A., James E. Melle and Donell R. Grubbs, for relator.

Ennis, Roberts & Fischer, C. Bronston McCord III and George E. Roberts III, for respondents.

Per Curiam.

{¶ 1} This is an original action in mandamus filed by relator, Dorsie Stacy, a former employee of the Batavia Local School District Board of Education ("board"), against respondents, the board; Tim Young, president of the board; Paul Varney, Superintendent of the Batavia Local School District; and Terry Stephens, treasurer of the district.

{¶ 2} Stacy was employed by the board as a school bus mechanic for approximately 14½ years, retiring effective August 21, 1998. On October 10, 2000, Stacy filed a complaint in this court seeking a writ of mandamus to compel respondents to reinstate him to his position as a school bus mechanic. This court denied the writ. See *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.* (Mar. 11, 2002), Clermont App. No. CA2000–10–077, 2002-Ohio-1015, 2002 WL 371953. However, on December 4, 2002, the Supreme Court of Ohio reversed, determined that Stacy's retirement was involuntary, and found that he was entitled to mandamus compelling his reinstatement. *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216. The case was then remanded to this court to address Stacy's claims for back pay and lost benefits. Id.

{¶ 3} On July 16, 2003, Stacy was granted leave to file an amended/supplemental complaint. The amended/supplemental complaint contains (1) a claim for reinstatement, back pay, and lost benefits (Count I); (2) a claim for costs and attorney fees based upon allegedly frivolous defenses by respondents (Count II); and (3) a claim for compensatory and punitive damages caused by allegedly retaliatory conduct by respondents that occurred after the remand and reinstatement ordered by the Supreme Court of Ohio (Count III). On January 30, 2004, respondents filed a motion for summary judgment as to Count III of the amended/supplemental complaint.

## Back Pay and Lost Benefits

{¶ 4} Pursuant to the remand referred to above, this court has been ordered by the Supreme Court to address the issues of back pay and lost benefits. The parties have conducted discovery and filed memoranda in support of their

respective positions. Upon consideration, the court resolves the back pay and benefits issues as follows:

## Back Pay

{¶ 5} The Supreme Court of Ohio has determined that Stacy's August 1998 retirement was involuntary because it was precipitated by the board's illegal actions. Accordingly, Stacy is entitled to back pay from August 21, 1998, his retirement date, until he was reinstated to employment with the board on December 23, 2002. The purpose of an award of back pay and damages is to put Stacy back in the position that he would have been in if his employment had not been wrongfully terminated.

{¶ 6} It appears from the record that Stacy would have earned the following amounts from August 22, 1998, to December 23, 2002:

| | | |
|---|---|---|
| 1998-1999 school year [1] | — | $ 20,605.98 |
| 1999-2000 school year | — | 27,222.72 |
| 2000-2001 school year | — | 34,654.40 |
| 2001-2002 school year | — | 35,214.40 |
| 2002-2003 school year | — | 16,523.68 |
| | | $134.221.18 |

## Step Increases

{¶ 7} The amounts above include step increases to which Stacy claims he would have been entitled had he continued to be employed by the board. The board counters that such increases are speculative because there is no reason to believe that Stacy would have received them. However, persons employed by the board did receive step raises during the time period in question. Given that Stacy would have been employed by the board and subject to the various collective bargaining agreements in effect over the disputed period, this court concludes that step increases would have been received and are therefore not speculative.

## SERS Benefits

{¶ 8} The above amounts include School Employees Retirement System ("SERS") benefits Stacy received as a consequence of his retirement. Respondents claim that the above amounts should be reduced by the SERS benefits that Stacy received because he was effectively reinstated to his former position with full pay and is therefore not entitled to additional pension benefits.

---

1. Because Stacy is a school district employee paid based upon contracts negotiated for a "school year," compensation is broken down into amounts due per school year.

{¶ 9} Stacy's position is that the amount he receives should not be reduced by SERS benefits he received because in July 2000 relator twice asked respondents to reinstate or re-employ him, and both times respondents refused. Stacy contends that respondents knew, or should have known, that the Ohio Supreme Court was going to ultimately reinstate him, or that respondents should have known that Stacy would be reinstated based upon the Supreme Court's June 21, 2000 decision involving district bus drivers.[2] Stacy argues that respondents therefore failed to mitigate their damages and should not be permitted to deduct the SERS benefits he received.

{¶ 10} This court finds that the board's initial position that Stacy's retirement waived any right he may have had to reinstatement was reasonable. The board had no reason to anticipate that Stacy would be reinstated by the Ohio Supreme Court. Although this certainly could have been seen by the board as a possibility, it was not a certainty and did not require respondents to mitigate damages by reinstating Stacy before they were ordered to do so.

{¶ 11} However, the SERS benefits at issue were received by Stacy due to his retirement. He would not have received these benefits had he not retired. Stacy received these benefits due to his years of service and payments into the SERS retirement system. It would be a windfall to the board if it were permitted to reduce the amount of back pay owed to Stacy by the amount he received from SERS as a result of his retirement. Accordingly, the court finds that Stacy's back pay award should not be reduced by the SERS benefits Stacy received.

## Social Security Benefits

{¶ 12} The back pay amounts above have not been reduced by Social Security benefits that Stacy received during his retirement. The Social Security benefits were received by Stacy due to other employment that he held prior to becoming an employee of the board. The total amount of Social Security benefits received by Stacy during the period in question is $32,992.

---

2. In *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, Local 4 AFL–CIO v. Batavia Local School Dist. Bd. of Edn.* (2000), 89 Ohio St.3d 191, 729 N.E.2d 743, the Supreme Court of Ohio found that bus drivers whose jobs had been "outsourced" by the board had been deprived of their employment in a manner contrary to the terms of a collective bargaining agreement between the board and the employees. The court ordered that the bus drivers be reinstated with back pay and benefits. Id. Stacy's job was outsourced along with the bus driver positions, but Stacy elected not to participate in the bus drivers' action; he instead retired. None of bus drivers involved retired; they accepted employment with Laidlaw Transit, Inc., which had assumed responsibility for the transportation needs of the district. Stacy refused employment with Laidlaw prior to retirement.

{¶ 13} In support of his position that the Social Security amounts he received should not be deducted from his back pay award, Stacy cites *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235. *Pryor* concerns the collateral source rule exception to the general rule of compensatory damages in a tort action. It holds that compensation from a collateral source (such as Social Security) is not admissible to diminish damages which a tortfeasor must pay for a negligent act. Relator also cites *Equal Emp. Opportunity Comm. v. O'Grady* (C.A.7, 1988), 857 F.2d 383, which holds that the collateral source rule should not be used to afford a "discrimination bonus" to an offending employer. See, also, *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.* (1994), 69 Ohio St.3d 89, 630 N.E.2d 669 (employee deduction of unemployment benefits from back pay award would benefit employer by reducing deterrence against discriminatory conduct).

{¶ 14} The above cases, however, find little application here. This case involves a collective bargaining agreement, not discrimination. All of the employees laid off by the board were treated equally. There is no evidence to the contrary, and no evidence that respondents harbored any discriminatory intent. Their actions were based upon a desire to save the board money within what they thought were the parameters of the applicable collective bargaining agreement.

{¶ 15} Notwithstanding all of the foregoing, it remains that the Social Security benefits received by Stacy were not related to work performed for the board in any way. Deducting Social Security benefits from Stacy's back pay award would result in a windfall for the board. Accordingly, the court concludes that the back pay amount Stacy receives should not be reduced by the Social Security benefits he received during retirement.

### Sick Leave

{¶ 16} Stacy contends that he is entitled to be credited with 82.5 hours of sick leave time. This time would have accrued had Stacy been employed by the board during the period in question and not used any sick leave during the same period. However, whether Stacy would or would not have used sick time is mere speculation. Such is an improper basis for awarding this additional benefit. See *State ex rel. Hamlin v. Collins* (1984), 9 Ohio St.3d 117, 9 OBR 342, 459 N.E.2d 520; *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 21 O.O.3d 228, 423 N.E.2d 1099.

### Attendance Incentive

{¶ 17} Stacy also contends that he should be paid a $1,200 "attendance incentive." He would have received this amount if he had not used any sick leave or personal leave days during the period in question. Again, whether Stacy

would have achieved perfect attendance is speculative. Id. Thus, he is not entitled to the attendance incentive amount. The court notes that Stacy's prior attendance record was imperfect and that he stated in a deposition that he "always" used his personal leave days.

## Prejudgment Interest

{¶ 18} Stacy contends that as a contract employee of the district, he is entitled to the ten percent statutory rate of interest for written contracts. Stacy claims prejudgment interest on his lost back pay in the amount of $9,527 based upon R.C. 1543.03(A), which provides that when money becomes due and payable upon any instrument in writing, the creditor is entitled to interest at a rate of ten percent per annum.

{¶ 19} In response, respondents rely upon two cases, *Beifuss v. Westerville Bd. of Edn.* (1988), 37 Ohio St.3d 187, 525 N.E.2d 20; and *Judy v. Ohio Bur. of Motor Vehicles,* 100 Ohio St.3d 122, 2003-Ohio-5277, 797 N.E.2d 45. In *Beifuss,* the Supreme Court of Ohio held that a public school board of education was not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment. Id., 37 Ohio St.3d at 190, 525 N.E.2d 20. The *Judy* decision, also by the Supreme Court of Ohio, cites *Beifuss* with approval for the proposition that a school board is not liable for prejudgment interest absent statutory authority.

{¶ 20} In *Judy,* the Supreme Court drew a clear distinction between prejudgment and post-judgment interest and found that the distinction was "born of good reason." Id., 100 Ohio St.3d 122, 2003-Ohio-5277, 797 N.E.2d 45, at ¶ 32. The court found that the policy behind prejudgment interest is to "encourage prompt settlement and to impose a civil sanction against the party who holds money against the lawful claim of another." Id.

{¶ 21} It strains credulity to argue that the board knew or had reason to know that Stacy's retirement would ultimately be found to have been "coerced," and that the Supreme Court of Ohio would order Stacy to be reinstated with back pay and benefits. This case was different from the case involving the district's bus drivers because none of the bus drivers had retired, and Stacy was not a party to the bus driver case. Relator's claim for prejudgment interest is denied.

## Mitigation of Damages

{¶ 22} The final argument that needs to be addressed with respect to back pay and benefits is the board's contention that Stacy is not entitled to any damages because he failed to mitigate his damages by looking for another job after being

forced to retire. Respondents note that during disposition testimony, Stacy on more than one occasion stated that he did not seek other employment after his retirement. However, at another deposition, Stacy testified that he did in fact review want ads from time-to-time in search of employment. Stacy testified that he was looking only for school bus mechanic positions, and stated that there were no such positions advertised in the *Brown County Press* or the *Cincinnati Enquirer* during the relevant time period.

{¶ 23} At his August 15, 2003 deposition, Stacy testified that he did some volunteer work as a mechanic for Mt. Orab Baptist Church. He also stated that he had "done some reading, looking for a job, I looked in the paper for a job, I bought a truck for myself, a wrecked truck and repaired it, I bought a car for my wife and repaired it, which we still have." He also stated that he and his wife took a "computer basics class" at Grant Vocational School in Bethel, Ohio. Stacy states that although he "learned a little bit" about computers, he basically attended the class to keep his wife company.

{¶ 24} In support of their position that mitigating employment opportunities were available, respondents have submitted job postings from the *Cincinnati Enquirer* and the *Clermont Sun*, both papers of general circulation in the area where relator resides. During the period that Stacy was involuntarily retired, there were many positions advertised seeking either a "mechanic" or "bus mechanic." According to the materials submitted by respondents, the following positions were advertised on the following dates:

Cincinnati Enquirer
August 1998-December 1998:    Mechanic-242;  Bus Mechanic-13
January 1999-December 1999: Mechanic-549;  Bus Mechanic-13
January 2000-December 2000: Mechanic-492;  Bus Mechanic-10
January 2001-December 2001: Mechanic-315;  Bus Mechanic-4
January 2000-December 2002: Mechanic-228;  Bus Mechanic-4

*Clermont Sun*
August 1998-December 1998:    Mechanic-18;   Bus Mechanic-2
January 1999-December 1999: Mechanic-36;   Bus Mechanic-1
January 2000-December 2000: Mechanic-11;   Bus Mechanic-2
January 2001-December 2001: Mechanic-16
January 2002-December 2002: Mechanic-12

{¶ 25} Stacy makes no direct response to the argument that he failed to mitigate his damages by seeking alternate employment. Rather, he contends that respondents "failed to take advantage" of opportunities to mitigate damages by reinstating him to his former position with the board. Stacy contends that the Supreme Court's decision finding that the bus drivers' positions had been improperly outsourced "foreshadowed" respondents' legal obligation to reinstate him. Stacy claims that respondents had a "second opportunity" when he applied

for his then-vacant mechanic's job as new hire.[3] Stacy claims that respondents' "third opportunity" to mitigate damages occurred when he filed the complaint in this case seeking reinstatement and back pay.

{¶ 26} In support of the argument above, Stacy relies upon *S.J. Groves & Sons Co. v. Warner Co.* (C.A.3, 1978), 576 F.2d 524. *Groves & Sons* states that the duty to mitigate damages is not applicable where the party whose duty it is primarily to perform a contract has an equal opportunity for performance and equal knowledge of the consequences of nonperformance. Id., 576 F.2d at 528–530.

{¶ 27} However, Stacy's argument assumes that respondents were acting unreasonably by taking the position that he had voluntarily retired from service with the board and was not entitled to reinstatement. As stated above, the court does not agree. Simply because the position that Stacy voluntarily retired was not ultimately upheld by the Ohio Supreme Court does not mean that the position was unreasonable or that it should now be construed as a foregone opportunity to mitigate damages. To adopt this view is tantamount to concluding that all that employees who believe they have been improperly discharged need to do to mitigate damages is ask for their jobs back. This would absolve such employees from making any further effort to obtain similar employment to mitigate damages.

{¶ 28} We therefore find that Stacy had a duty to mitigate the damages he suffered due to his involuntary retirement. The record indicates that Stacy had significant experience as a mechanic. He received training at a General Motors Training Center and worked for two Chevrolet dealerships. He had also been self-employed as a mechanic, operating two garage/service station businesses prior to his employment with the board. He worked on cars, trucks, and busses, including vehicles with both diesel and gasoline internal combustion engines.

{¶ 29} The majority of the newspaper advertisements submitted by respondents for bus driver positions indicated no pay amount. However, approximately 70 different advertisements did contain a proposed rate of pay in hourly, weekly, or yearly form.

{¶ 30} Approximately 60 of the advertisements where a pay rate was specified sought either general mechanics or did not specify whether the position would require work on buses. The hourly pay rates for these positions ranged from $6.50 to $31.25. The weekly pay rates ranged from approximately $260 to $1,250, and the yearly pay rates ranged from approximately $13,520 to $65,000. The

---

3. On July 17, 2000, Stacy asked respondents to reinstate him; Stacy applied for the vacant mechanic's job the next day on July 18, 2000.

average of the lower range of pay listed was $12.81 per hour, or $512.21 per week, or $26,635 per year. The average of the higher range of pay was $16.44 per hour, or $657.52 per week, or $34,191 per year.

{¶ 31} The remaining ten advertisements listed pay rates for bus mechanics, four of which were school bus mechanic positions. The hourly pay rates for these positions ranged from $9.50 to $19. The weekly pay rates ranged from approximately $380 to $760, and the yearly pay rates ranged from approximately $19,760 to $39,520. The average of the lower range of pay listed was $12.16 per hour, or $416 per week, or $21,671 per year. The average of the higher range of pay listed was $14.96 per hour, or $598 per week, or $31,125 per year.

{¶ 32} Based upon all of the above information, it is reasonable to conclude that Stacy could have found an equivalent mechanic or bus mechanic position paying $25,000 per year. The record shows that Stacy was involuntarily retired for four years and four months. Therefore, the amount of mitigation income he could have earned is $108,333.

### Resolution of Back Pay and Benefits

{¶ 33} Based upon the foregoing, Stacy is entitled to the following amounts for back pay and benefits for the period of his involuntary retirement:

$ 134,221.18 — back pay
( 108,333.00) — less mitigation income amount
$ 25,888.18

{¶ 34} The board is ordered to pay Stacy $25,888.18 for back pay and lost benefits. The board is further ordered to make appropriate SERS contributions based upon the total amount of back pay Stacy would have been entitled to receive ($134,221.18). Stacy is ordered to pay his employee share on this amount to SERS.

### Reinstatement to Mechanic Position

{¶ 35} Stacy returned to work on December 23, 2002. However, he contends that he was not "reinstated" to his former position because he must now work different hours (Stacy previously worked from 7:00 a.m. to 3:30 p.m. Monday through Friday; after reinstatement, his hours were 5:30 p.m. to 2:00 a.m.) and perform different duties (Stacy claims that he previously performed mechanical work on school buses such as wheel alignments and working on the braking and exhaust systems; he now washes and fuels buses, sweeps out buses, and writes up mechanical problems that come to his attention while performing these other duties).

{¶ 36} The Supreme Court of Ohio has determined that Stacy has a clear legal right to be reinstated to his former position as a mechanic. This case was

remanded "for the issuance of a writ of mandamus compelling Stacy's reinstatement to his former position as a mechanic and for further proceedings consistent with this opinion." *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, at ¶ 32. From the deposition testimony of Stacy and other district personnel, it is clear that Stacy has not been reinstated to his former position as ordered by the Supreme Court; he works different hours and performs substantially different job duties.

{¶ 37} The evidence indicates that there is a current employee who is working 6:00 a.m. until 2:30 p.m. Monday through Friday performing mechanic duties similar to those performed by Stacy prior to his retirement. This is the position to which Stacy should have been reinstated. Although the evidence indicates concern on the part of school officials as to whether Stacy is capable of performing mechanic duties, these concerns should be addressed *after* reinstatement, not before.

{¶ 38} It is therefore ordered that Stacy be reinstated to his former mechanic position, including the same or similar work hours and job duties as prior to his retirement.

## Attorney Fees

{¶ 39} Stacy maintains that the board's refusal to reinstate him and pay him his back pay amounted to frivolous conduct and actions taken in bad faith, and that he is therefore entitled to costs and attorney fees. However, as stated above, we find no basis for Stacy's belief that respondents knew or had any reason to know that his retirement would ultimately be found to have been coerced, and that Stacy would be reinstated with back pay and benefits. We therefore find that Stacy is not entitled to an award of costs or attorney fees.

## Compensatory and Punitive Damages

{¶ 40} Count III of Stacy's amended/supplemental complaint contends that he is entitled to compensatory and punitive damages because respondents "reinstated" him to a substantially different position that included different hours and job responsibilities. Stacy seeks additional compensatory and punitive damages due to respondents' alleged retaliatory actions in response to his reinstatement.

{¶ 41} The Ohio Constitution confers upon the Supreme Court and the courts of appeal concurrent, original jurisdiction over five extraordinary writs, including writs of mandamus. Section 2(B)(1), Article IV, Ohio Constitution; Section 3(B)(1), Article IV, Ohio Constitution. Extraordinary writs provide extraordinary remedies, not alternative remedies. An extraordinary writ will not be granted where the applicant has an adequate remedy in the ordinary course of law. Every action for an extraordinary writ requires the court to examine other

potential remedies to determine whether any exist and, if so, whether they would be adequate under the circumstances. See *State ex rel. Timken Roller Bearing Co. v. Indus. Comm.* (1961), 172 Ohio St. 187, 15 O.O.2d 332, 174 N.E.2d 249; *State ex rel. MacDiarmid v. Eastman* (1928), 118 Ohio St. 121, 160 N.E. 626. Ordinarily, mandamus is available only against a public officer or agency to require performance of an official act which the officer or agency has a clear legal duty to perform. See *State ex rel. Russell v. Duncan* (1992), 64 Ohio St.3d 538, 597 N.E.2d 142.

{¶ 42} Stacy is entitled to, and has been granted, reinstatement pursuant to his writ of mandamus. Whether respondents deliberately or maliciously refused to reinstate Stacy to his former position, whether such action caused Stacy to become injured and unable to work, and whether Stacy is entitled to compensatory and punitive damages as a result of respondents' actions, are matters far beyond the scope of the subject petition for writ of mandamus.

{¶ 43} Based upon the foregoing, the court finds that respondents' motion for summary judgment with respect to Count III of Stacy's amended/supplemental complaint is well taken. Count III of the amended/supplemental complaint is dismissed.

### Conclusion

{¶ 44} Accordingly, respondents are ORDERED to pay Stacy $25,888.18 in back pay and lost benefits pursuant to the remand ordered by the Ohio Supreme Court. Stacy and respondents are ORDERED to make appropriate contributions to the SERS retirement system based upon a total back pay amount of $134,221.18 within 90 days. Respondents are further ORDERED to immediately reinstate Stacy to a mechanic's position which encompasses work hours and work duties similar to those hours and duties as prior to his retirement. Count III of Stacy's amended complaint for mandamus is DISMISSED. Costs to be paid by respondents.

{¶ 45} IT IS SO ORDERED.

Judgment accordingly.

WILLIAM W. YOUNG, P.J., POWELL and VALEN, JJ., concur.